WILLIAM GORDON *vs.* WARE SAVINGS BANK & another.

Hampden.    September 22. — 23, 1874.    MORTON & ENDICOTT, JJ.,
                                 absent.

Money paid to a mortgagee by an insurance company, in pursuance of its agreement
    with the mortgagor, cannot be applied by him to the payment of the debt secured
    by the mortgage, if it be not due, without the consent of the mortgagor.
Where mortgaged premises are injured by fire and the amount of the loss is paid by
    an insurance company, in pursuance of its agreement with the mortgagor, to the
    first mortgagee, who pays the amount to the mortgagor to be applied in repair-
    ing the premises so as to make them as valuable as before the fire, and he so ap-
    plies it, the holder of a second mortgage on the premises has no equity to have the
    amount so received applied in reduction of the debt secured by the first mortgage.

BILL IN EQUITY by the holder of a second mortgage on a par-
cel of land in the town of Ware against the Ware Savings Bank,
to whom the land had previously been conveyed in mortgage,
and Daniel Holden, the owner of the equity of redemption. The
bill alleged that the sum of $780 dollars had been paid to the
principal defendant by an insurance company in payment of a
loss by fire of buildings on the land, and that this sum had been
indorsed by the defendant corporation on the note secured by the
mortgage to said corporation; that the lot of land had been sold
by the corporation under a power in the mortgage, and that it
refused to account for and pay over to the mortgagor or his as-
signs the surplus remaining after the payment of its debt.

Hearing before *Colt*, J., who reported, that no question of
jurisdiction was raised upon the pleadings, or at the hearing;
that he found the following facts, and reserved the case for the
consideration of the full court.

·On December 10, 1868, Daniel Holden gave a mortgage duly
recorded, of certain real estate, with power of sale, and an agree-
ment therein " to keep the buildings thereon insured against fire,
in a sum not less than $5,000 for the benefit of said corporation,"
to the Ware Savings Bank, to secure a note of $3,300 of that
date, payable on demand to said bank.   Holden also procured
insurance on the buildings, by a policy in which this clause was
inserted: " Payable in case of loss to the Ware Savings Bank
mortgagee, as its interest shall appear."

In the winter of 1870–1, the buildings were partly destroyed
by fire, and February 1, 1871, the insurance company paid to the

bank, the sum of five hundred dollars, which sum was then indorsed upon said note by a teller in the bank, as received on account of the principal, and also entered upon the books of the bank. The payment, soon after indorsement and entry, came to the knowledge of the treasurer, who had the general charge of the business of the bank. Holden did not know of the indorsement at the time it was made, but did soon after. When he ascertained it he claimed the money for the rebuilding of the burned property, but it was not paid him then, it being agreed that it should remain as it was, the money to be held by the treasurer until the buildings should be rebuilt, if they should be rebuilt, and then the matter should be adjusted.

The buildings, of equal or greater value, were afterwards rebuilt, and then on or about July 12, 1871, the bank paid to Holden $500, and Holden then erased the indorsement of said $500, and made the following memorandum on the back of the note : " This indorsement on principal erased by me, and the amount of the note is the same as originally made, $3,300." At this time no actual demand had ever been made for payment of said note, and no interest was unpaid. The corporation took no action upon the matter, and it was never brought before it in its corporate capacity.

On June 23, 1873, the bank sold the mortgaged premises by virtue of the power of sale for $3,580, and paid to Holden, or the plaintiff, as the balance due after paying their note, interest and expenses, $136.60. The amount of their note was considered by the bank in making such balance to be $3,300.

On January 5, 1870, Holden gave to the plaintiff a mortgage of the same premises to secure a note of $1,579 for money borrowed by him of the plaintiff, payable to the plaintiff, or order, on demand, no part of which note has ever been paid, except the $136.60 above specified ; this last mortgage and note were in the handwriting of the treasurer of the Ware Savings Bank, and the acknowledgment taken before him as magistrate, and the same witnessed by him. Said mortgage was duly recorded, January 10, 1870, and contained covenants that the premises are free of all incumbrances " except a mortgage deed to the Ware Savings Bank to secure the payment of $3,300."

The defendant Holden made no defence, and the bill was taken for confessed as against him.

*H. B. Stevens*, for the plaintiff.  1.  The money was paid by the insurance company to the bank, received by the teller, indorsed on the note by him as applied to the principal, and was also entered upon the books of the bank.   All the proceedings were in the regular course of business of the bank.  When the treasurer having general charge of the business knew of the transaction, he approved and thereby made it his own, that is, the transaction of the bank.   And the indorsement remained on the note, and the entry on the bank books, and the money in the bank, until July 12, following, more than five months, and then the bank paid to Holden $500, and Holden erased the indorsement of said $500. When Holden claimed the money to rebuild, it was refused him, but the treasurer told him that when the buildings should be rebuilt, provided they should be rebuilt, the matter should be adjusted, thereby making any further adjustment dependent on the contingency of Holden's rebuilding.   The principal, then, of said · note was reduced to $2,800, February 1, 1871, and remained so reduced to July 12, 1871, and during that period of more than five months, the mortgage secured a debt to the bank of only $2,800 ; and the mortgage was discharged by operation of law, *pro tanto*, and no act of the parties could revive it.   *Holman* v. *Bailey*, 3 Met. 55.   *Richardson* v. *Cambridge*, 2 Allen, 118.   *Merrill* v. *Chase*, 3 Allen, 339.  The mortgage, therefore, at the time of sale secured a note of $2,800, and any unpaid interest, and that being the only sum remaining unpaid on said note, the bank must account for the proceeds of sale upon that basis.

2.  It cannot be objected that the plaintiff has not suffered and therefore is not entitled to the relief sought.  As well might it be said, if the whole $3,300 had been paid and the mortgage discharged, and a month afterward the bank had again lent Holden $3,300 on mortgage of the same land, such lien should have precedence of the plaintiff's, provided only the premises remained of the same value.   The plaintiff's lien attached as a first lien, just so fast as the prior incumbrance was reduced, and to the extent of such reduction, that is, every payment on the principal of Holden's note to the bank, enured to the benefit of the security of the plaintiff, and no subsequent act of Holden or the bank could prejudice the vested rights of the plaintiff, thereby created.

*J. G. Allen*, for the defendant.

WELLS, J. The plaintiff, by virtue of his second mortgage, acquired no right to, or interest in the policy of insurance. His bill in equity must be maintained, if at all, upon one of two grounds; 1st, that the receipt of $500 by the defendant operated as an absolute payment, *pro tanto*, of the debt secured by the first mortgage; or, 2d, that in equity the money received from insurance ought to be appropriated for the relief of the second mortgage. We are of opinion that the bill is maintainable upon neither ground.

1. The insurance was for indemnity to the mortgagor as well as to the mortgagee. To the mortgagee it was for protection of the security, not for payment of the debt. It was collateral to the debt. Money received from the insurance took the place of the property destroyed, and was still collateral until applied in payment by mutual consent, or by some exercise by the mortgagee of the right to demand payment of the debt, and upon default of payment, to convert the securities.

There was no such consent by the mortgagor; and the facts do not show that the money was received and indorsed upon the note with any intention to exercise the right to convert the security for payment of the debt. The indorsement was erased and the money appropriated to its original purpose, to wit, the restoration of the security. Both mortgagor and mortgagee treated the indorsement as a mistake or as unauthorized; and we see no reason why they might not properly do so.

2. The money having been properly applied to the restoration of the impaired security, for the benefit alike of all parties interested, there are no equities in favor of this plaintiff which entitle him to appropriate that benefit exclusively to his own use. On the contrary, it would be inequitable even if such were his legal right by reason of the indorsement of the money, in the first instance, upon the note. *Bill dismissed.*