# Teutonia Fire Insurance Company *versus* Mund, to use of Biddle et al.

1. Particular words or expressions in a written agreement are to be construed in reference to the subject-matter of the agreement. Words should not be taken in their broadest import where they are equally appropriate in a sense limited to the object the parties had in view, and that limited construction is most favorable to the promisee.

2. Where the terms of a policy of insurance are susceptible, without violence, of two interpretations, that construction which is most favorable to the insured, in order to indemnify him for loss sustained, should be adopted.

3. The words "premises mortgaged," in a policy of insurance, construed, as between the insurance company and the mortgagee insured, to mean in favor of the latter, and without injustice to the insurers, "so

[Teutonia Ins. Co. *v.* Mund, to use of Biddle.]

much of the mortgaged premises as was insured by the policy," to wit : the building insured, and not the entire lot mortgaged with the building thereon.

4. A policy of fire insurance of a *building*, assigned to the mortgagee of the *building and lot* (and held by him, with the approval of the company, in accordance with a special provision in the policy), provided, that in case of loss the company should pay to the mortgagee " such proportion of the sum insured as the damages by fire to the premises mortgaged or charged shall bear to their value immediately before the fire." *Held*, that the words " premises mortgaged " in this clause should be construed to mean "so much of the mortgaged premises as was insured at the time of the fire."   Hence, the building being equal in value to the amount insured, and having been totally destroyed by fire, the mortgagee was entitled to recover, in an action on the policy, the full amount insured,—not merely the proportion of the sum insured which the value of the building bore to the value of the whole lot mortgaged with the building thereon.

January 9th 1883.    Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ. .

Error to the Court of Common Pleas No. 4, of *Philadelphia county :* Of January Term 1882, No. 437.

Covenant, on a policy of fire insurance for $5,000, by Philip Mund and Bernhard Albrecht, to the use of Alexander Biddle and Charles H. Hutchinson, guardians of the estate of W. A. Bingham, plaintiffs, and The Teutonia Fire Insurance Company of Philadelphia, defendant.

The question in the case was the construction of a clause in the policy, and it was raised by demurrer.

The plaintiffs declared on the policy, as assigned, with the company's approval, by the legal to the equitable plaintiffs as collateral security for a mortgage of the premises insured ; averred a total destruction by fire of the building insured during the life of the policy ; and a sale of the premises under foreclosure of the mortgage for a sum inadequate to pay the mortgage.

The defendant pleaded a forfeiture of the policy by reason of an increase of risk by the owner of the insured premises, contrary to a provision in the policy.

Replication, admitting the fact of increase of risk contrary to a provision in the policy, but setting out certain other provisions in the policy to the effect that where a policy had been assigned as collateral security to a mortgagee, such increase of risk by the owner, without the knowledge of the assignee, should not invalidate the policy as to the latter, but in such case "the insurance shall thenceforth stand in all respects as though originally effected on such mortgage ;" and the company then had the option either of paying the mortgage and taking an assignment thereof, or, of paying to the insured "such portion of the sum insured as the damages by fire to the premises

mortgaged, or charged, shall bear to their value immediately before the fire, but not exceeding such value."

Rejoinder, that the damage by fire to the premises mortgaged was $5,000 ; and the value of the mortgaged premises immediately before the fire was $25,0)0, whereby the sum payable by defendants was in the proportion of one-fifth of the amount insured ($5,000) to wit, $1,000, which amount defendants had tendered and paid into court, &c.

Demurrer to rejoinder—that the rejoinder does not aver the value of *so much of the mortgaged premises as was insured* at the time of the fire, but avers an immaterial fact, to wit, the value of the *whole mortgaged premises* at the time of the fire.

After argument on the demurrer, the court, in an opinion by BRIGGS, J., held that under the above-cited clause of the policy, relating to payment by defendant of a proportionate amount of the sum insured, the defendants were required to pay the proportion which the amount of damage bore to the value, not of the whole premises mortgaged, including the lot, but to so much only of the mortgaged premises as was insured, to wit, the building, which latter was of the full value of the amount insured, and was totally destroyed. The court therefore entered judgment for the plaintiffs, on the demurrer.

The clauses of the policy material to the issue are set forth verbatim in the opinion of this court.

The defendants took this writ of error, assigning for error the judgment for the plaintiff on the demurrer.

*R. C. McMurtrie* (with him *Henry M. Dechert*), for the plaintiff in error.

*John G. Johnson*, for the defendants in error.

Mr. Justice CLARK delivered the opinion of the court, February 26th 1883.

The whole contention here arises upon the construction of a single clause in the policy of insurance, upon which suit is brought. The policy is fully set out in the declaration, and the question is brought before the court by the demurrer to the defendants' rejoinder. The contract of insurance bears date the 7th day of June 1874, and by its terms the Teutonia Fire Insurance Company covenant to indemnify the assured, Mund and Albrecht, to an amount not exceeding $5,000, for all loss or damage which may happen, from fire, to the property therein described, viz :

" A three-story hotel building, with three-story stone back building, situated about one hundred and fifty yards northwest of Indian Queen Lane, and about four hundred and fifty yards

northeast from the Norristown Road, in the 28th Ward of the city of Philadelphia."

On the 17th day of May, 1875, Mund and Albrecht, by indorsement on the policy and with the consent of the company, transferred the policy to the equitable plaintiffs, as a collateral security to a mortgage, held by them, which mortgage covered, inter alia, the premises insured. On the 1st day of April, 1876, after the transfer of the policy to the mortgagee, Mund and Albrecht, in violation of the conditions of the policy, set up, on the insured premises, a machine for manufacture of gas from benzine or gasoline, thereby increasing the risk and forfeiting their rights under the contract. On the 3d day of September, 1876, the entire premises insured were destroyed by fire.

The 5th and 4th conditions of the policy are as follows, viz:

V. "Where a policy issued to the owner of a building shall be duly assigned to the holder of a mortgage or ground-rent thereon as collateral security, no subsequent breach of or non-compliance with these conditions by the owner of the building, without the knowledge of such assignee, shall avoid the insurance, so far as the interest of the latter therein shall be concerned; but in case of any such subsequent breach or non-compliance, the insurance shall thenceforth stand in all respects as though originally effected on such mortgage or ground-rent specifically, and be subject to all the stipulations and provisions contained in condition IV of this policy."

IV. "Where a ground-rent, mortgage or other lien on real estate is specifically insured, such insurance shall not be affected by any sale or change of occupation or use of the premises mortgaged or charged, without the knowledge of the insured, though the risk may be thereby increased, provided that the insured shall, within thirty days after he shall be informed of any such sale or change of occupation or use, give due notice thereof to this company. *In all such cases, upon any loss, the company shall have the option of paying to the insured, either such proportion of the sum insured as the damage by fire to the premises mortgaged or charged, shall bear to their value immediately before the fire, but not exceeding such value, or else the full amount of such lien or mortgage debt or the principal of such ground-rent, in which latter case, this company shall be entitled to require an assignment of such ground-rent, mortgage or other lien, in due form, together with a declaration by the owner of the ground, or, if the same cannot be obtained, then other sufficient evidence that he has no defence or offset thereto.* All such insurances shall be subject to the express condition that a marketable title can be shown to the premises and that the mortgage, lien or ground-rent is the first lien or incumbrance thereon, unless otherwise expressed in this policy."

[Teutonia Ins. Co. v. Mund, to use of Biddle.]

The whole controversy is upon the construction of that clause, in the 4th condition, which is italicised.

The appellant contends that the value of the entire premises mortgaged, including the land as well as the buildings insured, is the subject whose value is to be taken with the loss by fire, in order to ascertain the proportionate part of the sum insured, payable under the policy. The appellees contend that the value of the premises described in the body of the policy, that is to say, the buildings, not including the ground, is the subject of value, to be taken with the loss, in order to ascertain the proportion.

Both parties assume the damage by the fire to be the numerator in the fraction of the loss, which the appellants should bear, but, as the denominator, the appellants set down the value of the premises described in the mortgage, and the appellees the value of the premises described in the policy.

The contract, when first made, was between the assurers and the owners—it was made to cover their losses, if the risks were not changed or the loss not caused by them. If the conditions of the policy had been kept, the extent of the loss, and the amount of the indemnity were the only factors in the problem of the assurer's liability.

By the transfer to the mortgagees, however, the contract was thenceforth to stand, in all respects, as though originally effected on the mortgage; the measure of liability is therefore necessarily dependent upon another and different method of computation. The mortgage, which is the subject of insurance, may not for years be liable to foreclosure, an exact present ascertainment of loss may be impracticable, and, although the security be depreciated by the fire, non constat, that there may be any ultimate loss to the mortgagee, as his margin may have been large enough to cover his debt. But the mortgagee has a right to support that margin and maintain the amplitude of his security to provide against any contingency, or even apprehension of loss.

What therefore are we to understand by "the premises mortgaged or charged" in the 5th condition of the policy ?

The word "premises" in an instrument of writing implies a reference to previous matter contained therein, and concerning which something is proposed. In this instance the previous subject matter of the contract is the insurance of "a three-story hotel building, with three-story back building, situate," &c. ; no lot of ground is mentioned or described in connection with the buildings, which could by any reasonable intendment be embraced in the "premises." When these premises are spoken of as having become the subject of a mortgage, they would be properly referred to as the "premises

mortgaged;" these words may therefore mean the whole of the premises covered by the mortgage, or merely such of the premises as were covered by the policy—the premises insured.

If there be doubt, in view of the general tenor of an instrument of writing, whether the words used therein are to be taken in an enlarged or restricted sense, all other things being equal, that construction should be taken which is most beneficial to the promisee. This rule of construction is perhaps especially applicable to the construction of policies of insurance, the provisions and conditions of which are, as admitted in the argument, prepared by the assurers themselves, and their advisers, persons thoroughly conversant with the principles and practice of insurance, with the utmost deliberation, "every word being weighed, and every contingency debated," and, thus prepared, are executed and delivered to the assured, who ordinarily have no part in their preparation.

Therefore, in Western Ins. Co. *v.* Cropper, 8 Casey 351, it is held, "that if an exception in a policy be capable of two interpretations, equally reasonable, that must be adopted which is most favorable to the assured, for the language is that of the assurer." This principle is approved and recognized in Commonwealth Ins. Co. *v.* Berger et al., 6 Wright 292 ; Insurance Co. *v.* O'Mally, 1 Norris 400. To the same effect is Hoffman *v.* Ætna Fire Insurance Co., 32 N. Y. 405, where it was held, that no rule in the interpretation of a policy is more fully established, ·or more imperative and controlling than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity, which in making the insurance it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss, must in preference be adopted.

Another rule of construction, equally well known, is that the words of an agreement are to be applied to the subject matter about which the parties are contracting at the time. "The matter in hand is always presumed to be in the mind and thoughts of the speaker, though his words seem to admit of a larger sense, and therefore, the generality of words used shall be restrained by the particular occasion. Words should not be taken in their broadest import when they are equally appropriate in a sense limited to the object the parties had in view :" Hoffman *v.* Ætna Ins. Co., supra.

"All words," says Lord BACON, "whether they be in deeds or in statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person :" Bacon's Law Maxims, Reg. 10.

[Teutonia Fire ins. Co. *v.* Mund, to use of Biddle.]

The realty, being exempt from casualty, by fire, was presumably not in contemplation of the parties, in the act of insurance, and this presumption is somewhat strengthened by the terms used in the 5th condition of the policy, viz:

"When a policy, issued to the owner of a *building*, shall be duly assigned to the holder of a mortgage, or ground rent *thereon*, as collateral security, no subsequent breach of, or non compliance with, these conditions by the owner of the *building*," &c., &c. Whilst, perhaps a mortgage might be properly spoken of, as being upon a building yet as the antecedent use of the word " premises " clearly refers to the building alone the peculiarity of the language employed, in the clause quoted, seems to throw some light on what was contemplated by the parties, in the use of the term " premises mortgaged."

Indemnity is the real object and purpose of all insurance, that is what the assured bargains for and what the insurer intends to provide. Says Phillips (Phillips on Insurance § 124): " The predominant intention of the parties, in a contract of insurance, is indemnity, and this is to be kept in view and favored in putting a construction upon the policy."

In May on Insurance § 174, the learned author says: "It was early held with special reference to contracts of marine insurance that the *strictum jus*, or *apex juris* is not to be laid hold on, but they are to be construed largely for the benefit of trade and for the insured : Tiernay *v.* Ethrington, 1 Burr. 341; a rule which, under different forms of expression, has obtained with reference to all kinds of insurance to the present day. Having indemnity for its object the contract is to be construed liberally, to that end and it is presumably the intention of the insurer that the insured shall understand, that in case of loss he is to be protected to the full extent which any fair interpretation will give : Dow *v.* Hope Ins. Co., 1 Hall Sup. Ct. 174; Riggin *v.* Patapsco Ins. Co., 7 Harr. & J. (Md.) 279. The spirit of the rule is that when two interpretations, equally fair, may be given, that which gives the greater indemnity shall prevail. To afford a reasonable indemnity in any given case, the amount of the insurance money payable would, or should, bear some proportion to the value of that which was lost, and against the loss of which the contract was made. It would seem absurd to estimate the loss upon any other basis. The value of the land, or any other matter, not the subject of the insurance, unless expressly made material by the contract, would seem to be unimportant in the estimate. If the mortgagee desired to indemnify himself against the loss of the buildings, to maintain the margin of his security why should the value of the land affect the verdict ? What principle of indemnity against the loss of buildings could involve an inquiry as to the price of the land ?

[Teutonia Fire Ins. Co. *v.* Mund, to use of Biddle.]

The contracts of those who engage in the business of general insurance, with a fixed form of policy, should be construed if the language of the contract is reasonably susceptible of such construction, so as to afford a scheme for calculating a proportion, which will produce uniform results upon some general principle, or rule of indemnity. An experiment with a few hypothetical cases, wrought out according to the appellant's scheme of proportion, will fully illustrate the fact, that the results are not uniform, are agreeable to no general rule of indemnity, do not preserve any relative proportion between the mortgage debt and the security, and in some cases, indemnity is impossible.

On the other hand, it would seem proper that the damages sustained from the fire, and the value of the mortgaged premises insured, before the fire, should be the terms of a proportion which will determine the amount of the insurance money payable in any given case. It was against the loss of the buildings the insurance was taken, and the proportion which the injury bears to their value gives such a ratio of the insurance money which the insurer should contribute to the loss, as is consistent with the purpose of indemnity. This scheme gives uniform, consistent and just results, preserves approximately the relative proportion of the mortgage debt and security, and gives the assured a measure of indemnity, corresponding with the purpose of his contract.

Where the buildings are insured to their full value, and the loss is total, in that case only, can the assurer be held for the full amount, but if the defendant company made such a contract, they should comply with its terms. It is objected, however, that, without any increased consideration, the assurers are thus held to insure against the very class of risks which their policy was especially conditioned against ; that by the assignment of the policy as collateral, they are subjected to greater hazard and increased risk, and receive no proportionate consideration therefor. It will be observed however that the transfer is made with the consent of the company, the increased risks are voluntarily accepted, new rights and new duties accrue to and are assumed by both parties ; the duty of notice is enjoined upon the mortgagees perhaps to afford opportunity for cancellation ; Mund and Albrecht are eliminated from the contract and its provisions subsist between other parties under new terms and conditions ; the measure of damages is materially changed ; the right to an assignment of the mortgage is stipulated for and thus, in some cases, full indemnification against loss is secured.

We are of opinion, that the words of the contract already referred to may reasonably be taken, either in an enlarged or

restricted sense, and that inasmuch as the more limited sense gives a construction to the policy more beneficial to the assured, appropriate to the subject matter of the contract, and in accord with all its remaining provisions, producing in the largest variety of cases uniform results, consistent with the purposes of the instrument, the contract should be thus construed, and especially so as it appears that no injustice is thereby done to the assurers.

We are therefore constrained to construe the clause under consideration, "the premises mortgaged or charged" to embrace only the premises mortgaged which were insured, and therefore we find no error in the judgment of the court below.

Judgment affirmed.