## Home Protective Savings & Loan Ass'n v. Woodson et ux.

*Charles A. Wallace* and *Rufus C. McKinley*, for plaintiff.

*Gilbert E. Long*, for defendants.

CHAMBERS, J., July 14, 1930.—This case was heard before the court *in banc* on petition to stay writ of execution.

On January 17, 1925, the plaintiff loaned to defendants the sum of $1800, and to secure the same defendants executed their bond in the sum of $3600 and a mortgage on certain real estate of Patsy Anna Woodson, one of the defendants. The loan was to be repaid in instalment payments. Both the bond and mortgage contained provisions that a default in payment for six months made the entire debt due and payable at once. For the better protection of the plaintiff, insurance on the buildings on the mortgaged premises was taken out and a mortgagee clause placed thereon in favor of the plaintiff. On December 9, 1929, the buildings on the mortgaged premises were partially destroyed by fire. At that time the defendants were in arrears in payments sixty-four weeks. The fire loss was adjusted at $681.17. A draft for that amount dated December 30, 1929, payable to the order of Patsy Anna Woodson and the plaintiff, was forwarded to J. F. P. Kennelly, the agent of the insurance company in this city. The said agent, Mr. Kennelly, started to repair the premises and had expended the sum of $45 when the plaintiff notified Mr. Kennelly that it was entitled to the insurance money and demanded the same. After some negotiations it was agreed between the parties that Mr. Kennelly would be reimbursed the sum of $45 expended by him on repairs to the property and that the insurance premium of $16 which

had not theretofore been paid should also be paid to him and that the draft should be endorsed by Patsy Anna Woodson and turned over to the plaintiff, which was done, the draft being delivered to Rufus C. McKinley, attorney for the plaintiff, on January 13, 1930, and sent to the plaintiff and received by it on January 14, 1930. On January 13, 1930, the board of directors of plaintiff formally declared the defendants to be in default by being in arrearage on payments for more than six months; that their right to have the loan was determined; that the whole debt with interest, premium and fine was immediately due and payable, and proceedings were directed to be commenced for the collection of the whole amount. Notice of this action was given to Mrs. Woodson, one of the defendants, by letter dated January 20, 1930. On February 5, 1930, the plaintiff filed in this court a confession of judgment on the bond for the balance due under its mortgage and bond, to wit, $868.08, together with an attorney's commission of 5 per cent., and directed execution to issue. Execution was issued and on March 1, 1930, a petition to stay the writ was presented by the defendants.

The position taken by defendants is that the plaintiff, having received into its hands the amount paid by the insurance company and having appropriated it to its own use, had then more than sufficient moneys to pay up all arrearages owed by the defendants, and that at the time judgment was confessed there were no arrearages and the plaintiff, therefore, had no right to execution and that they are entitled to have the writ stayed and that no execution may issue on the judgment until further default be made. Instead of taking testimony to establish the facts a statement of facts was agreed upon. The facts heretofore stated have been in accordance with this statement of facts. From the agreed facts it appears, that in addition to the arrearages in payments, taxes have been accumulated upon the property in the following amounts: county taxes delinquent, $13.68; city, school and poor taxes to the aggregate amount of $91.48; that there has also been filed against the mortgaged premises a municipal claim for street paving to the amount of $304.92. It is contended on the part of the defendants that, while the bond and mortgage each contained provisions requiring all taxes and municipal claims to be paid when due and that failure so to do is a default, yet, since the plaintiff did not set these matters forth as a default at the time judgment was confessed, these matters of default are immaterial in considering the present question. In our opinion it is unnecessary to consider these matters in order to dispose of the matter before us.

The question now before the court, as far as we are able to determine, has not been decided by any of the courts in our state. The case most nearly approaching the one at bar we find in Farley v. Kelly et al., 24 Dist. R. 911. In that case Farley had purchased from Kelly a paper mill for $15,000, paying $2000 cash and giving a mortgage for the balance of the purchase money in the sum of $13,000. Payments of $2000 upon the principal were to be made annually until the last year, when $3000 was to be paid. The mortgage was given on December 2, 1913. On June 21, 1914, the premises were destroyed by fire. There had been no default on the mortgage. The mortgagors restored the property, while not in exactly the same form in which it had formerly existed, yet in a manner found by the court to render the premises as valuable, if not more so, than before the fire. Insurance on the premises had been carried in the sum of $12,000, with a mortgagee clause attached in favor of the mortgagees. The insurance loss was adjusted at $10,658.52. The money was deposited in a bank in the joint name of the plaintiff and defendant. The plaintiff brought his bill, praying that the

insurance moneys be decreed a trust fund and be applied to the rebuilding and reinstatement of the mill property. The case was heard before Schwartz, P. J., and a very exhaustive opinion filed by him on the adjudication. We quote the following from his opinion:

"The insurance is to secure the debt. It is not the primary purpose to raise a fund, in case of fire, to pay the debt, but the real purpose is to secure the payment of the debt. The mortgagee takes the property as his security for the debt. The insurance policies are not intended to give him something above or in addition to the property. These policies are to supply so much of the property as may be destroyed by fire. The insurance money is a substitute and stands for the property destroyed. There is no more reason why the mortgagee should appropriate this money for his debt, unless there is a default on the mortgage, than there is to foreclose the mortgage against the property if there is no default."

Under the facts as existing, the court holds that the insurance moneys should be decreed to be a trust fund to be applied upon the improvements made to the property. As authority for this position the court cites the following cases: Teutonia Fire Ins. Co. *v.* Mund, 102 Pa. 89; Gordon *v.* Ware Savings Bank, 115 Mass. 588; Fergus *v.* Wilmarth, 7 N. E. 508; Naquin *v.* Texas Savings and R. E. Ass'n, 67 S. W. 85; Connecticut Mutual Life Ins. Co. *v.* Scammon, 4 Fed. 263; Huey *v.* Ewell, 55 S. W. 606.

In the case at bar, however, we have a much different set of facts from that set forth in Farley *v.* Kelly, *supra.* In this case there was a default. Payments were in arrears at the time of the fire for a period of sixty-four weeks, more than twice the time permitted by the bond and mortgage. There has been no restoration of the property. There have been no payments made to cover the arrearage on the part of the defendants. No moneys have come into the hands of plaintiff except the proceeds from the insurance. When the plaintiff received the money from the insurance, it applied it upon the principal debt and not to arrearages. This was proper, the purpose of the insurance being to protect the security: Teutonia Fire Ins. Co. *v.* Mund, 102 Pa. 89; Gordon *v.* Ware Savings Bank, 115 Mass. 588; Naquin *v.* Texas Savings and R. E. Ass'n, 67 S. W. 85. By so applying it, the plaintiff is in the same position as it was before the fire. It has the property partially destroyed plus the insurance in its hands as security for its debt. The defendants are still in arrears. The arrearages make the entire debt due and owing and the plaintiff would have the right to proceed for judgment and execution. Had plaintiff desired to apply the money to the payment of arrearages and had done so, then there might be merit in the contention of the defendants, but the affidavit of claim filed with the præcipe shows the application of the money to the principal debt. The letter to Mrs. Woodson notifies her that it has been so applied. The defendants now ask the court, in the face of this, to apply these moneys to the payment of arrearages. This we feel the court is unable to do; that such a course would be inequitable. It would be in effect compelling the plaintiff to apply its security to the payment of interest and current indebtedness and thereby reducing its security. As we see it, at the time of the confession of the judgment the situation of the parties was exactly as it had been immediately after the fire. The defendants were then in arrears; the property had been partially destroyed and the plaintiff had the right to whatever was due under the insurance policy to hold in lieu of that part of its security which had been swept away by the flames; the securing of that money and applying it to the debt did not alter the situation; at the time of the confession of judgment and the issuing of the writ of exe-

cution the payments were still in arrears and the property had not been restored.

In accordance with the foregoing opinion, we, therefore, make the following

### Order.

Now, July 14, 1930, the rule issued March 1, 1930, to show cause why the writ in this case should not be stayed is discharged and the sheriff is directed to proceed with the execution of the writ.

From William McElwee, Jr., New Castle, Pa.