## Smith v. Connecticut General Life Insurance Company

*L. Barton Ferguson*, for plaintiff.

*Reed, Smith, Shaw & McClay*, for defendant.

MUSMANNO, J., March 22, 1932.—Hamilton L. Smith, the plaintiff, was injured while riding on an escalator in Kaufmann's Department Store in Pittsburgh. He carried a policy of insurance with the Connecticut General Life Insurance Company, which policy provided, inter alia:

"The company will pay triple the amount otherwise payable under sections I, II, III, for any loss caused or sustained as follows: While the insured is a passenger in or on a public conveyance provided by a common carrier for passenger service (including the platform, steps or running board of railway or street railway cars); or while the insured is a passenger in an elevator (excluding mine or freight elevators). . . ."

The question before the court is: Is the Connecticut General Life Insurance Company, the defendant, required, under the terms of the policy, to pay triple indemnity to the insured because of his injuries sustained on an escalator? The plaintiff contends that the defendant is so obligated; the defendant contends that it is not, maintaining that to be so triply liable under the provisions of the contract of insurance an escalator would need to be classified as an elevator.

The question, therefore, boldly put is: Is an escalator an elevator, for the purpose of interpreting this contract of insurance?

It is firmly established in Pennsylvania that an insurance policy must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to the indemnity which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must in preference be adopted: Teutonia Fire Ins. Co. v. Mund, to use, 102 Pa. 89, 94.

This rule is founded on good reasoning. The contract which is the subject matter of dispute is prepared by the insurers and their advisers, persons thoroughly conversant with the principles and practice of insurance. The contract is written with the greatest of deliberation, "every word weighed and every contingency debated," and, thus prepared, it is executed and delivered to the insured, who ordinarily has no part in the preparation: Teutonia Ins. Co. v. Mund, to use, supra.

If the insurer then omits from the contract something which business prudence would dictate should be incorporated, it can reasonably be assumed that it was omitted purposely.

In the contract before us for adjudication, why was the word escalator omitted when the insurer enumerated the exclusions to the scope of the term elevator? Was it because it assumed that escalator did not come within the purview of the term elevator; was it because, although premising that an escalator was a form of elevator, nevertheless it did not regard it as a dangerous type of elevator, and therefore there was no unusual risk (on the part of the insurer) in bringing it within the scope of the triple indemnity provision; was it because it overlooked completely the concept of escalators? If the omission of any reference to escalators was due to oversight or a lack of foresight (which is difficult to believe, in view of the usual comprehensive sweep of all insurance contracts), this would be no defense on the part of the insurance company, for it is charged with the natural consequences of its acts and the logical interpretations of the words used by it. The connotations of a contract are enforceable as well as its express terms: 2 Elliott on Contracts, 778, sec. 1507.

Does the word elevator, therefore, embrace the concept of an escalator?

The court is of the opinion that an escalator is a species of the genus elevator. An elevator is any mechanical contrivance used for the purpose of raising or lowering objects or persons from one level to another. An escalator is a particular form of mechanical contrivance used for the purpose of raising or lowering persons from one floor level to another. When the word elevator is used in a contract, unless the context clearly indicates that the word elevator refers to but one or more distinct types of elevators, it will be construed to include all types. Elevators are named from their construction as electric elevators, float-

ing elevators, hydraulic elevators, piston elevators, pneumatic elevators, traction elevators, steam elevators, telescopic elevators, and so on. From their use or purposes they are named as passenger elevators, freight elevators, grain elevators, hay elevators, transfer elevators, mine elevators, hand elevators, hoists, lifts, escalators.

When the Connecticut General Life Insurance Company stated that it would pay triple indemnity in the event the insured sustained loss while a passenger in an elevator, it used a generic term. That the authors of the contract knew, realized and so intended elevator as a generic term is evidenced by the fact that they immediately followed it with the limiting words excluding mine or freight elevators. When they excluded mine or freight elevators they included every other kind of elevator. Here the maxim, "expressio unius est exclusio alterius," applies.

Why did the defendant exclude mine and freight elevators from the triple indemnity feature of this contract? For the obvious reason that accidents on mine and freight elevators are more likely to happen than on any other type of elevator. In an article on elevators in the Nelson Encyclopedia we find this significant statement about mine elevators: "As a rule [on mine elevators], the speeds are higher than are employed in ordinary passenger or freight work, and because of the great depths to which such hoists operate the factors of safety on cables are generally considerably lower." The same thing is true of freight elevators as compared to the usual passenger elevators. Many of the laws compelling safety devices on passenger elevators do not cover freight elevators. The obvious reason, then, for excluding mine and freight elevators from the operation of the contract before us was that passengers riding on mine or freight elevators are more liable to be hurt than those riding on ordinary passenger elevators. The obvious reason for not including escalators in the exclusions is the fact that escalators are not in the category of dangerous instrumentalities which embrace mine and freight elevators.

The defendant cannot be made to insure a risk it never contracted to accept, but having insured the passenger's transportation on any elevator, excluding only mine and freight elevators, it is bound to pay the indemnity agreed upon for any accident which occurs on any device which is an elevator, outside of the two excepted devices.

In attempting to exclude escalators from the scope of the term elevator, the defendant is led into the as yet unspoken argument that an escalator is a more dangerous instrumentality than the elevator (as the defendant seeks to define elevator). The court is of the opinion that the escalator is not more dangerous than the elevator, here using the word elevator as intended by the defendant. The elevator climbs to perilous heights; its speed is frequently very swift and, to some passengers, vertiginous; and it is without the slightest control of the passenger. In the event of an accident, the passenger is utterly helpless so far as self-preservation is concerned. He takes the chance of being killed or seriously injured through the breakage of cables, the failure of motor power, the premature or delayed opening and closing of gates and doors, and any one of a score of other possibilities, to none of which he contributes through any fault of his own. The possibilities of injury on an escalator are considerably less. The passenger is always out in the open and in the event of an accident has a chance to leap to comparative safety, and under the most unfortunate hypothesis his greatest fall can only be from one floor to the next below. While, of course, a passenger could suffer serious injury or even death on an escalator, it must be obvious that in comparison to the possibilities of elevator mishaps the escalator affords a safer means of travel. The defendant in this case can, there-

fore, scarcely be heard to complain that it cannot be made to accept a risk greater than that it acknowledged in elevator transportation.

If the argument should be advanced that an elevator is less dangerous than an escalator because the elevator always carries an attendant and the escalator does not, the reply to.that argument is that an elevator does not always carry an attendant. Automatic elevators, of which there are thousands in operation now, do not carry an attendant, and their operation is left entirely to the passenger. In that respect, therefore, it is in the same category as the escalator; and, if the plaintiff in this case had been injured on an automatic elevator, certainly the defendant company then would not be heard to refuse payment of the triple indemnity on any ground that it did not intend to insure automatic elevator riding because those elevators do not carry an attendant.

Defendant's counsel argues that the decision in Deardoff, Admin'r, v. Continental Life Ins. Co., 301 Pa. 179, should by analogy govern the case at bar. In that case recovery was sought in an action on a policy of accident insurance for death resulting from an accident while riding in a motorcycle, where the policy insured the decedent against death or injury by "the wrecking or disablement of any private automobile, motor-driven car or horse-drawn vehicle, in which the insured is riding or driving." Defendant's counsel points out that there the Supreme Court held that a motorcycle cannot be called a car. This is true, but the Supreme Court went further and showed that a motorcycle is a far more dangerous instrumentality than an automobile. Mr. Justice Kephart, in an opinion of unerring logic, declared:

"A motorcycle is an instrument of danger on the highway, even more so than an automobile. It is dangerous to the public at large, but the special danger is to the driver of the motorcycle itself. When the driver of an automobile attempts to pass a motorcycle on the highway, he must exercise great care; should he touch the rider while passing, serious consequences follow. The passing of motorcycles around automobiles is also dangerous and annoying. Motorcycles on the highway are constantly dodging in and about cars, subjecting both to great risks. Because of the accidents attributed to, motorcycles they are frequently termed a common nuisance. There is greater danger connected with the operation of a motorcycle than any other self-propelled, power-driven vehicle. The insurance company no doubt had this in mind, and, because of the definite difference in risk, there is no reason to believe they were intended to be included within any of the insured classifications made by this policy."

As the Supreme Court in this case held that the insurance company undoubtedly had in mind that a motorcycle was far more dangerous than an automobile, so also do we hold here that the insurance company must undoubtedly have had in mind that an elevator as such is a far more dangerous instrumentality than the escalator, and it was for that reason that it did not exclude the escalator from the triple indemnity clause, together with the mine elevator and the freight elevator.

Because the Act of June 14, 1923, P. L. 756, Sec. 1, refers to "all elevators, dumb-waiters, escalators, gravity elevators, hoists, manlifts, or other conveyances used for the purpose of raising or lowering persons or material," it does not mean, as defendant's counsel insists, that the Pennsylvania legislature intended to declare, as a matter of law, that an escalator is not an elevator. If one followed that line of reasoning, it would lead to the conclusion that the legislature intended to say also that a gravity elevator is not an elevator and that hoists and manlifts are not elevators, which, of course, would be absurd. The reference in defendant's counsel's brief to the Act of March 19, 1925, P. L. 58, is entirely irrelevant.

Defendant's counsel in his brief quotes the definition of an escalator as given by the Webster's New International Dictionary, namely: "A stairway or incline arranged like an endless belt so that the steps or treads ascend or descend continuously, and one stepping upon it is carried up or down; a trade term." He also quotes that dictionary's definition of an elevator as "one that raises or lifts up anything." An escalator certainly "raises or lifts up" something. This same dictionary outlines the various types of elevator and enumerates them in this order: "(a) A mechanical contrivance, usually an endless belt or chain with a series of scoops or buckets, for transferring grain to an upper loft for storage; (b) a cage or platform and its hoisting machinery in a hotel, warehouse, mine, etc., for conveying persons, goods, etc." One can detect at once the similarity of the mechanical principle in the elevator as illustrated in item (a) and the mechanical principle of the escalator as defined in that same dictionary.

There is perhaps no nonlegal work which is quoted more frequently and more authoritatively in the decisions of all English-speaking courts throughout the world than the Encyclopedia Britannica. This work devotes three pages to an article on elevators. It places elevators in the generic class of lifts and hoists and describes them as "machines for raising or lowering loads, whether of people or material, from one level to another." It gives a history of the elevator, describes the various types of construction, the essentials of design, safety devices employed and so on. In describing the various types of elevators it places the escalator distinctly in the class of elevators and says:

"The 'travelling staircase,' which may be classed among the passenger elevators, usually consists of a staircase so constructed that while the passenger is ascending it the whole structure is also ascending at a predetermined rate, so that the progress made is the sum of the two rates in motion. The system of 'treads and risers' is carried on a long endless band of chain sustained by guides:" Encyclopedia Britannica, vol. 9, page 266 (11th ed.).

The Funk & Wagnalls Dictionary defines an elevator as, first, "An endless belt or chain passing over two pulleys or sprockets and having buckets, disks or other contrivances for raising solids or semi-solids." Then, after defining two other types of elevators, it defines the fourth type as "A platform or small chamber made to ascend and descend in a shaft or framework, for transferring persons, vehicles, or merchandise from one floor or level to another." It will thus be seen that that type of elevator which conforms to the mechanical principles employed in the escalator is the type first defined in the Funk & Wagnalls Dictionary. The reason for this is that the first elevator invented was built on the chain and belt principle. The escalator, although now adapted for passenger carrying, is but a reversion to the original elevator which, with its inclined belt of gratings, treads, buckets, etc., carried only inanimate objects.

The Nelson Encyclopedia is a loose-leaf encyclopedia which is kept up to date by periodical addition of data gathered from the current historical happenings and developments in science. In its article on elevators it describes an elevator as "a mechanical device for raising persons or objects to a higher level." This article describes practically every type of elevator, particularly enumerating the freight elevator, steam elevator, hand elevator, invalid lift, and then escalator, which it defines as a "power-driven stairway arranged to transport passengers either up or down."

The New International Encyclopedia, published in 1915, defines an escalator as "a form of mechanical elevator for passengers or freight in which the lift is in a direction inclined from the vertical."

The Colliers New Encyclopedia, published in 1926, defines an escalator as "an elevator in the form of a moving stairway."

The court realizes that, while the definitions and descriptive articles of standard dictionaries and encyclopedias are informative, they are not binding on courts of law. Nevertheless, they are presumed to be entirely impartial, and courts could scarcely, with reason, ignore the unanimity or near-unanimity of scientific interpretation by lexicographers and encyclopedists.

In practically every instance here the lexicographers and encyclopedists have indicated that they regard an escalator as a type of elevator. The defendant company, through its expert draughtsmen of insurance policies, cannot be considered ignorant of this general knowledge. It, therefore, follows as a proposition of law that the Connecticut General Life Insurance Company knew that an escalator is a type of elevator and that it intended, in writing its policy, to hold itself liable in triple indemnity for losses sustained by its insured while riding as a passenger on an escalator.

For the reasons stated, the defendant's motion for judgment on the pleadings is, therefore, refused.

From William J. Aiken, Pittsburgh, Pa.