## Lerner v. Philadelphia Motor Car Company et al.

*Horace M. Schell*, for plaintiff.

*Norman P. Harvey*, for defendants.

JONES, J., January 10, 1949.—This is an action upon a contract of insurance. The insured claims to recover the amount of damages for which they were held legally liable and paid by reason of the theft of an automobile while it was in their custody. The insurer denies liability upon the ground that the theft was not such as was covered by the policy provisions entitled "Garage Keepers' Legal Liability Coverage Endorsement", "Coverages", "Locations: Limits of Liability".

The action, by agreement of the parties, was tried by the court, Burch, J., without a jury under authority of Section 12 of the Act of July 12, 1913, P. L. 711, as amended by the Act of June 20, 1919, P. L. 515, 17 P.S. 695.* In such non-jury trial the trial judge functions as a jury and his finding is as the verdict of a jury.†

Upon April 7, 1948 the trial judge made answer to the requests for findings of fact and conclusions of law, filed a memorandum opinion and made a finding in favor of the insured and against the insurer in the sum of $673.81.

Thereafter the insurer filed "Exceptions to findings of fact and conclusions of law", a motion for a new trial and a motion for judgment non obstante vere-

---

* By stipulation of counsel dated March 3, 1948 it was agreed that the action be tried as one in assumpsit wherein the defendants above named be regarded as plaintiffs and the garnishee above named as defendant.

† Jann v. Linton's Lunch, 150 Pa. Super. Ct. 653, 656 (12/11/42); Schoenfeld v. Meckes, 57 D. & C. 531, 547, 548 (7/16/46).

dicto. Written briefs were filed and oral argument was had pro and contra the exceptions and motions before the court en banc. December 24, 1948 the exceptions and motions were dismissed and judgment was entered on the finding of the trial judge.

The writer of this Opinion was not the trial judge. However, having concurred in the entry of final judgment, it was thought proper that the reasons for such concurrence be stated, in view of the earnestness with which the question raised was argued and its answer regarded to be of consequence in the interpretation and construction of the class of legal liability insurance contracts to which the instant one belongs.

The question involved is the correct interpretation of the insurance contract, that is to say, the ascertainment of its true meaning, and the application of such true meaning to the facts established by the evidence, that is to say, the construction of the contract. This determined, the issue is resolved.

The controlling facts are simple. The following were the circumstances of the happening. The insured conducted an automobile garage and repair business at the location Nos. 1155-61 S. Broad St., Philadelphia, Pa., consisting of a building erected upon a piece of land in front of which was a fully paved sidewalk extending from the building line to the curb which marked the boundary line of a roadway for vehicular traffic entitled in the policy "S. Broad St. Philadelphia, Pa.". This sidewalk extending the entire frontage of the building was of the width of twenty-two feet and three inches, across which was a driveway from the roadway to the building for entry into and exit therefrom.

April 18, 1945 an owner-customer brought his automobile to the insured's place of business at the stated location and placed it in their custody to have repairs made. The understanding was that the insured were

to make the repairs and have the car ready for delivery when the owner called for it the afternoon of the same day. The repairs having been made, the insured, not having "too much space in the garage", removed the car from the "garage" and placed it "out on Broad Street . . . on the pavement" for the purpose of delivery to the owner when he called at the time agreed. When the owner called for the automobile delivery could not be made to him for the reason that it had been stolen. The fact of theft, injury to the car by reason thereof, the amount of damage, the legal liability of the insured therefor to the owner are not in issue.

The Insurance Company-defendant denies liability upon the ground that the theft was not such as is covered by the provisions of the insurance policy issued to plaintiffs. The provisions read as follows:

"GARAGE KEEPERS' LEGAL LIABILITY COVERAGE ENDORSEMENT"

"COVERAGES"

"B. THEFT, If the entire Automobile is taken $41.00"

"Such coverage applies only while said automobiles are in or on the premises at locations stated below or while temporarily removed therefrom for the purpose of testing in connection with repairs made by the Insured or, in accordance with contract between the Insured and the owner, while said automobiles are being called for or delivered."

"4. LOCATIONS: LIMITS OF LIABILITY The limit, at each location, of the Company's liability by reason of any hazard for which coverage is afforded and the maximum number of automobiles of others to be stored in or on each location, are as follows:

| Location | Limit of Liability | Maximum number of Customer's Automobiles stored. |
|---|---|---|
| 1155-61 S. Broad St. Philadelphia, Pa. | $15,000. | 26-50" |

Under the recited liability coverage provisions the insurer's liability attaches in the case of the theft of automobiles in the custody of the insured while "in or on the premises" at the stated locations or removed therefrom for the stated purposes, that is to say, upon any of three possible events or contingencies: (1) "while . . . in or on the premises", (2) "while temporarily removed therefrom for the purpose of testing in connection with repairs made by the Insured", (3) "while temporarily removed therefrom . . . in accordance with contract between the Insured and the owner, while said automobiles are being called for or delivered."

The oral argument before the court en banc upon the exceptions and the motions revolved about the first of the recited contingencies. It was contended on behalf of the insurer that the theft having been committed while the automobile was upon the sidewalk, it was not committed while "in or on the premises", the contention being that the sidewalk bounding the land and building was not part of "the premises" as the phrase is used in the policy. On behalf of the insured it was contended that the sidewalk was a part of the premises, hence the liability. Whichever of the two contentions be held to be valid, an answer to the question raised by the insurer denying liability upon such ground is not conclusive in denial of a right of recovery.

Liability was not restricted to theft "while in or on the premises". The fact questions presented are: For what purpose, under what circumstances and for what period of time was the automobile on the sidewalk when stolen. There was but one of three loca-

tions at which any automobile in the custody of the insured and covered by the liability provisions of the policy could be at any time: (a) in the building which covered the entire land upon which it was erected, or (b) removed therefrom and located on the sidewalk, or (c) removed therefrom and located in or on the roadway. The facts found give indisputable answers. The automobile was located on the sidewalk in front of the building to which place it was removed from the building temporarily for the purpose of delivery to the owner who, in accordance with his contract with the insured, was to call for it the afternoon of the same day. He did call at such time. Delivery could not be made because it was stolen while temporarily at such location for the purpose of delivery at such time. Having been removed from the building, was it within the scope of contingency "(2)" or "(3)"? I am of the opinion that its status at the time of the theft makes "(3)" applicable. The words of the provision are free from complexity, their meaning plain, whatsoever differing factual situation may be held also to be within the scope of the broad and general language of this lability provision.

Though not stressed at the oral argument it was contended in the brief filed on behalf of the insurer that the words of contingencies "(2)" and "(3)" restrict the liability, applying solely while the automobile is "in the actual physical custody of an employee" of the insured.*

The question thus presented is: What is "actual physical custody". Under what circumstances is an automobile "in the actual physical custody of an em-

---

* "The only instances in which the car is protected when it is not 'in or on the premises', will be seen to be instances where it is in the actual physical custody of an employee, as where it is being delivered, where it is being called for, and where it is being tested." (p. 9 of Brief filed in support of Motions for a New Trial and for Judgment Non Obstante Veredicto.)

ployee"? Is it occupancy of the car, standing watch over it, working in close personal contact with it, or having it within the range of vision of an employee? † Is an automobile "in the actual physical custody" of an employee when, for example, while testing it he leaves it in the roadway or sidewalk, enters a 'phone-booth to call his employer for aid to have the car removed to the workshop, engine trouble having developed? Is the insurer relieved from liability in the event of theft under such circumstances? Is it not common knowledge and if not, is it not known by insurers, their agents and solicitors, that daily in the conduct of garage business automobiles are removed from the building or garage temporarily for delivery to owners and that they are not each of them, if any, at such time "in the actual physical custody of an employee"? To construe the liability provisions of this policy so as to deny liability for theft of automobiles while so located under such circumstances is to torture the language of the policy in violation of common-sense. If "actual physical custody" of each car when removed from the "premises", however this latter term be defined, be a required condition to entail liability upon the insurer, why insure? The protection afforded by the policy would be meager, the premium prohibitive, for to the price paid to the "insurer" would have to be added the wages of the employee-guard. Into what a myriad of "ifs" "ands" and "buts" such an interpretation of the words of the provision involves the parties to the contract and the courts in its application to the

---

† The automobile in the instant case was in the range of vision of the occupants of the building, employer and employees alike. The photographs of the frontage and sidewalk attached to the Stipulation filed disclose the fact.

varying factual situations disclosed in actions arising upon such policies which are so essential in the conduct of the garage and repair business in the wheel-moving, mechanical economy of this age in which we live.

The policy is "an ordinary business contract", as common as is the garage business to which it applies. Its language must be construed in its application to an established state of facts in accordance with the common usages of the business and understanding of those engaged therein and for whose indemnification the policy is designed by the insurer and sold to the insured. The insurer would have the court re-write the contract, interpret and construe is as though it read "while temporarily removed therefrom and in the actual physical custody of an employee of the insured". This the court cannot, will not do. The policy does not so read. It is not so written. The policy is the creation of the insurer. By its "letter" must it be judged. If the contended-for restriction was intended, the English language was not and is not devoid of the means to express in clear, precise and unambiguous terms the indemnity liability the insurer intended and offered for sale. There can be no legal excuse for the use of words "susceptible of two interpretations" in an insurance contract, one of which works a forfeiture, the other liability. In the interpretation and construction of such contracts there is no place for dialectical niceties or implications denying recovery. Common-sense is the standard. "Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts. . . . A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop." These words

quoted from the opinion in Bird v. St. Paul F. & M. Ins. Co., 224 N. Y. 47, 51, are apt. They are the "guide" in the interpretation and construction of this contract.

True it is that liability arises under the circumstances outlining the insurer's contention, as the contention itself admits, whatsoever be the meaning of "in the actual physical custody". The effect of the contention, however, is to establish the fact that the words of contingency "(3)" "are, without violence, susceptible to two interpretations." The insured, therefore, is entitled to recover under the binding rule of construction applicable to insurance contracts, to wit:

"When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss, must in preference be adopted." *

The denial by the trial judge of the insurer's requested definition of the phrase "in or on the premises" as used in the policy and his refusal to apply such definition in the interpretation and construction of the policy, if erroneous, does not relieve the insurer, for its liability under the recited coverage provision under the facts of this case arises without regard to the meaning which may be ascribed to the terms, premises, sidewalk, roadway or street.

In the opinion of the writer the exceptions filed and the motions for a new trial and for judgment non obstante veredicto were properly dismissed and the judgment entered in favor of the insured and against the insurer upon the finding of the trial judge was in accordance with the law of the case.

_____

* Teutonia Fire Ins. Co. v. Mund, 102 Pa. 89, 94 (2/26/1883).