GEORGE H. FERGUS *et al.*

*v.*

SETH WILMARTH *et al.*

*Filed at Ottawa May 15, 1886.*

1. DEED OF TRUST *to secure a debt—insurance money coming to the hands of the trustee—of its proper application.* A trustee, in pursuance of a provision in the deed of trust, received insurance money for a loss by fire of the buildings on the mortgaged premises, in a case where the trust deed required the mortgagor to keep the property insured for the further security of the debt, which had not matured and become payable: *Held,* that the money so received took the place of the buildings destroyed, and was in the trustee's hands a part of the security for the debt.

2. In such case, the trustee is the agent of both the mortgagor and the holder of the mortgage debt, in respect to the money, and as the principal debt was not due, and no default had been made in the payment of the interest, the trustee could not apply the fund to the reduction of the debt without the consent of the debtor. Nor could he pay over the same to the mortgagor on his mere promise to expend the same in replacing the buildings destroyed.

3. SAME—*in case of a loss of the insurance money after coming to the hands of the trustee—rights of the parties.* A mortgagor insured the buildings on the premises in the name of the trustee, as a further security for the

debt. Before the mortgage debt became due, a loss by fire occurred, and the insurance company paid the insurance money to the trustee, who retained the same, the mortgagor being unwilling to have it applied in reduction of the debt, and, on the request of the mortgagor, deposited the same in a bank of good credit and standing at the time, but which afterward failed. At no time did the trustee have the note or trust deed in his possession, and he did not receive the money as the agent of the creditor: *Held,* on bill to foreclose the deed of trust, that the mortgagor was not entitled to have any part of the insurance money, so received by the trustee, and afterwards lost by the failure of the bank, applied as a payment on the mortgage debt.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. R. B. BACON, for the plaintiffs in error:

The provisions of the trust deed constitute the contract between the parties, as to the kind and amount of insurance that was to be furnished. The powers and duties of the trustee in relation to said insurance, depend upon the terms and provisions of the deed of trust. 2 Perry on Trusts, 158, sec. 602.

The trust deed conferred no power upon the trustee to hold or control the disposition of the insurance money after its collection. The proceeds of the insurance represented a part of the mortgaged property. *Life Ins. Co.* v. *Scammon,* 4 Fed. Rep. 263; *Gordon* v. *Savings Bank,* 115 Mass. 588.

The insurance was in the mortgagor's interest. It was for indemnity to the mortgagor as well as to the mortgagee. It was collateral to the debt, and the mortgagee had no right, without the mortgagor's consent, to convert the same until he had a right to demand payment of the debt. *Gordon* v. *Savings Bank,* 115 Mass. 588; Jones on Mortgages, (2d ed.) sec. 410.

If the mortgagee were informed by the trustee that he held the insurance money, after its collection, as a security for the

mortgagee and for his benefit, and after demand therefor by the mortgagor for rebuilding purposes, and the mortgagee thereafter assented to such holding by said trustee, then, if such holding were wrongful, the mortgagee would be liable therefor. *Barker* v. *Garvey*, 83 Ill. 184; Story on Agency, sec. 255; *Life Ins. Co.* v. *Scammon*, 4 Fed. Rep. 263.

Mr. E. A. OTIS, for the defendant in error Seth Wilmarth:

The indebtedness was not due at the time of the collection of the insurance money, and Furness had no power to collect and apply it on the indebtedness without the consent of both parties. Payment of the money to Furness, as trustee, was not a payment to Wilmarth. Furness had no authority from Wilmarth to accept payment of the indebtedness from Fergus, and if he had assumed to do so, and released the trust deed without actual payment of the money, the release could have been set aside. *Keohane* v. *Smith*, 97 Ill. 156.

If Furness had paid the money to Fergus for the purpose of rebuilding, he would have become responsible to Wilmarth if the money had not been properly applied. *Gordon* v. *Savings Bank*, 115 Mass. 588.

There is no liability on the part of Furness for the loss occasioned by the failure of the bank. He acted in good faith, and used all reasonable diligence, besides acting on the recommendation of Fergus. *Gettins* v. *Scudder*, 71 Ill. 86; Perry on Trusts, sec. 443.

Mr. GEORGE W. SMITH, for the defendant in error Furness.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill to foreclose a trust deed, dated June 26, 1871, executed by George H. Fergus and wife to William E. Furness, trustee, upon lot 3 in block 12 in Kinzie's addition to Chicago, to secure a note of same date for $12,000, borrowed

money, made by George H. Fergus, payable five years after date to order of Alexander H. Rice, agent, drawing interest at eight per cent per annum, payable half yearly, and indorsed over by Rice to Seth Wilmarth. The bill was taken as confessed by all the defendants, except Fergus and wife, who answered, admitting the execution of the note and trust deed, ·but denying the existence of the full indebtedness claimed, and averring, that by the terms of said trust deed the said George H. Fergus was required to insure the buildings on said premises for $7500, and by the policy the loss, if any, was to be made payable to said trustee for the benefit of the holder of said notes; that prior to the fire of October, 1871, he had so insured said buildings for said sum, and had placed the said policy in the hands of said trustee; and the buildings were in said fire destroyed, and said trustee afterward, to-wit, on or about September 1, 1872, collected from said insurance the sum of $7500, and the same should have been credited on said principal note, and should now be credited on said indebtedness as of the time when the same was paid to said trustee.

The exact language of the covenant in the trust deed, about which the dispute arises, is as follows: "And will and shall keep all buildings (except outhouses) that may, at any time during the continuance hereof, be upon or a part of the said premises insured against loss or damage by fire, in such insurance company or companies as the said party of the second part, or his successor in trust, his heirs or assigns, may direct, for the full insurable value thereof, not to exceed, however, the amount of said indebtedness; and will and shall, with the proper consent of the insurers, assign the policy or policies to the said party of the second part, his successor in trust hereinafter named, his heirs or assigns, upon request therefor, as a further security for the indebtedness aforesaid."

The circuit court of Cook county, where the cause was tried, rendered a decree, in favor of Wilmarth, for $14,272.10, on

35—117 ILL.

January 16, 1880, under which the property was sold by the master. A writ of error was prosecuted from the Appellate Court of the First District, to review the decree, after the time of redemption had expired, and after the purchaser at the sale, or his assignee, had received a master's deed. Upon the affirmance of the decree by the Appellate Court, the cause was brought here by further writ of error from this court.

The only specific assignment of error is, that the trial court did not allow to the plaintiff in error a credit, upon the mortgage indebtedness, of the full amount of money, paid to the trustee by the insurance company.

On August 3, 1872, Fergus received from the insurance company a draft for $7500, in payment of the insurance on the property. The draft was payable to the trustee's order, and was turned over to him on the same day, on which it was received. On August 13, 1872, the trustee deposited the money in the Scandinavian National Bank of Chicago, and received a certificate of deposit therefor. On December 9, 1872, the bank failed and went into the hands of a receiver. On March 1, 1873, the receiver issued and delivered to the trustee a certificate, certifying, that such trustee was a creditor of the bank to the amount of $7643.83. Subsequently, the receiver paid two dividends to the trustee, one of $1910.96 and one of $1146.58, all of which money was paid out either to Fergus, or for his benefit and upon his account, towards the erection of a new building upon the premises. Upon the trial of the cause the complainant below turned over the receiver's certificate to Fergus, who accepted the same. Fergus paid the interest upon the whole amount of the mortgage down to December 26, 1877.

After the collection of the insurance money by the trustee, the question arose what he should do with it. He was the agent of both the mortgagor and the holder of the note. The money took the place of the buildings, destroyed by the fire, and was, in his hands, a part of the security for the debt.

The creditor, Wilmarth, desired to have the money credited upon the indebtedness, but Fergus was unwilling to have such application made of it. As the principal was not yet due and no default had been made in the payment of interest, the trustee could not apply the fund to the reduction of the debt without the consent of Fergus.

Fergus wished, that the money should be paid over to him to be used in the construction of a new building upon the lot. It would not have been right for the trustee to have turned over to the mortgagor either the whole amount at once, or different portions of such amount at different times, unless its application to the erection of a new building, and, thereby, a consequent increase in the value of the security, could have been, in some way, made certain. If Fergus had received the insurance money and had appropriated it to some other purpose, neglecting to improve the lot at all, the creditor would have had reason to complain of the trustee. The latter was not unwilling, as the testimony shows, to pay over the $7500 to the mortgagor, whenever he should be offered, in exchange for it, a new insurance policy for the same amount upon any new structure, that might be placed upon the premises. Fergus himself testifies: "an agreement was made, that I was to have the money, when the roof was on the building." He did not commence rebuilding until the latter part of October, 1872, and there is nothing in the testimony to show, that "the roof was on," before the bank failed on December 9, 1872.

Under these circumstances, the trustee did not pay the money to the creditor to be applied on the debt, nor to the mortgagor upon a mere promise, that it would be used in rebuilding. He concluded to hold it, until there was a default in the payment of some portion of the indebtedness, or until the new building should have progressed far enough to justify an expenditure of the fund in liquidating the cost of its erection. We can not see, that, by this course, he failed

in his duty towards either party. The views, here expressed, are in harmony with those of the opinion in *Gordon* v. *Ware Savings Bank,* 115 Mass. 588.

At no time, during any of these transactions, did Furness, the trustee, have the note or trust deed in his possession. They were in Massachusetts in the hands of Wilmarth. Furness did not receive the insurance money, as the agent of the holder of the note, authorized to collect the debt secured. His position was that of mere trustee, in a deed of trust, occupying the relation of agent as much to the mortgagor, as to the beneficiary in the deed. Jones on Mortgages, sec. 1771.

As to the deposit of the money in the Scandinavian National Bank, it was done at the suggestion of Fergus and in compliance with his wishes. He was a friend of Siller, the cashier, and was doing work, as a printer, for the bank. He told Furness, that he knew the Scandinavian bank and had had dealings there; and that it paid interest on deposits, and he requested, that the money be placed there. He took the trustee there and introduced him to the cashier. The bank had a fair standing, and was in good credit, at the time the deposit was made. The money was deposited to the credit of the trustee, as such, and not mingled with his private funds.

In no view of the case, can the appellee, Wilmarth, be charged with this sum of $7500, as a credit upon his mortgage indebtedness. We see no error in the accounting, had before the master in the trial court. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*