Claude CHURCHWELL, Appellant
(Plaintiff below),

v.

FIRESTONE INDUSTRIAL PRODUCTS
COMPANY, A DIVISION OF the FIRE-
STONE TIRE AND RUBBER COMPA-
NY, Appellee (Defendant below).

No. 2–981A316.

Court of Appeals of Indiana,
Second District.

Feb. 25, 1982.

Rehearing Denied May 11, 1982.

Richard A. Young, Frederick W. Crow, Young & Young, Indianapolis, for appellant.

Richard D. Wagner, James G. McIntire, Krieg DeVault Alexander & Capehart, Indianapolis, for appellee.

SHIELDS, Judge.

Claude Churchwell (Churchwell) initiated this action against Firestone Industrial Products Company (Firestone) when Firestone denied him employee disability pension benefits.

We affirm.

Churchwell was hired by Firestone on March 23, 1966 and worked continuously until he was involved in an automobile accident on February 18, 1976 which left him totally and permanently disabled.

On March 15, 1978 he applied for and was denied long-term disability retirement pension benefits. This suit was thereafter initiated, but summarily concluded when the trial court granted Firestone's motion for summary judgment. The issue raised in the motion and on appeal is the interpretation of certain provisions of Firestone's disability plan.[1]

We are well cognizant of our standard of review when a trial court has granted summary judgment. As summarized in *Barr v. State*, (1980) Ind.App., 400 N.E.2d 1149, 1150, the relevant considerations are as follows:

---

1. We direct appellant counsel's attention to Appellate Rule 7.2(A)(1). The motion to correct errors is neither certified nor is it located after the table of contents as required. 4A *Bagni, Indiana Practice Appellate Procedure* § 45 (1979).

"A summary judgment is rendered when after reviewing all the pleadings, depositions, answers to interrogatories, and admissions on file along with affidavits and testimony, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(c). On appeal from a grant of summary judgment, the only issues are whether the trial court correctly applied the law and whether there is a genuine issue of material fact. *Tekulve v. Turner*, (1979) Ind.App., 391 N.E.2d 673. In addition, any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hale v. Peabody Coal Company*, (1976) Ind. App., 343 N.E.2d 316. Further, even where the facts are not disputed, summary judgment is improper where there may be disagreements as to the inferences to be drawn from these facts. *Palmer v. State*, (1977) Ind.App., 363 N.E.2d 1245."

■ Churchwell directs our attention to portions of three documents which he contends are ambiguous and alleges their construction creates a genuine issue of material fact. However, the construction of even an ambiguous contract is a question of law where the ambiguity arises by reason of the language used and not because of extrinsic facts. *South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc.*, (1979) Ind.App., 395 N.E.2d 320, 325, citing *Prather v. Ross*, (1861) 17 Ind. 495. Churchwell does not contend the documents are ambiguous because of extrinsic facts. Consequently, our review is not whether any genuine issue of material fact exists but whether the trial court, as a matter of law, correctly construed the documents or correctly determined the documents were not ambiguous.

■ The most crucial document is "Firestone's Pension and Insurance Plan for Hourly-Rated Employees" (Plan) effective June 22, 1973, which provides in relevant part:

"Article IV—Eligibility For Pensions, Section 3., Disability Retirement. An Employee who shall have had not less than 10 years of credited service, and who shall thereafter become, through some unavoidable cause, permanently and totally disabled while accumulating seniority with the Employer, shall be entitled to a pension upon retirement as hereinafter provided. An Employee shall be deemed to be permanently and totally disabled only:

(a) If he has been totally disabled by bodily injury or disease so as to be prevented thereby from being physically able to perform the work of any classification in the local plant, and

(b) If such disability shall have continued for five consecutive months and, in the opinion of a qualified physician designated by the Pension Board, will presumably be permanent and total during the remainder of his life."

The Plan further provides, in part, in Article V, section 3:

"A pension payable pursuant to this Paragraph 3 . . . shall commence in the sixth month following the occurrence of the permanent and total disability, provided that an application for pension is made not later than 5 months following the occurrence of such permanent and total disability. In the event application is not made in the five-month period referred to, the pension shall commence in the month following that in which application is made."

Credited Service is defined by the Plan as:

"Article VII—General Provisions, Section 3. The term 'credited service' means seniority on record with the Employer. 'Credited service' with respect to the period beginning July 1, 1973 will be computed on the basis used for computing seniority as provided in the Agreement. Provided, however, that such credited service shall not include service with the Employer after the Employee attains 65 years of age. An Employee's credited service shall be terminated by retirement

or severance award, or by termination of seniority as provided in the Agreement."

The second document is entitled "Agreement Between the Firestone Tire and Rubber Company and the International Union of The United Rubber, Cork, Linoleum and Plastic Workers of America, Akron, Ohio, AFL–CIO and Between The Firestone Tire and Rubber Company (Akron Plant) and Local Union No. 7 United Rubber, Cork, Linoleum and Plastic Workers of America" (Agreement). The agreement became effective October 29, 1973 and the relevant portion defining seniority provides:

"Article IV—Seniority and Leave of Absence, Section 1.

(a) Seniority is continuous service at a local plant computed by the time actually spent on the active payroll of that plant plus approved absence as hereinafter defined.

. . . .

(g) An employee who is off work because of a non-factory injury or illness, shall accumulate seniority for a period not to exceed two (2) years from the first date of his absence. During this period he shall be subject to layoff and recall according to his seniority."

Churchwell further contends a benefit booklet must also be considered in resolving the question. The booklet, however, by its express provisions is merely an aid to describe briefly the provisions of the Plan and notifies the employees that "[i]n all cases, the rights and benefits . . . are governed solely by the terms and conditions of each formal Plan." Churchwell cannot avail himself of the claimed contradictory statements because the clear and plain language of the booklet declares that all the benefits are governed by the formal Plan. *See Anthony v. Ryder Truck Lines, Inc.*, (E.D.Pa. 1979) 466 F.Supp. 1287, *generally* 50 A.L. R.3d 1270.

Both parties are in agreement that, in order for Churchwell to be entitled to benefits of the Plan, he must have at least ten years credited service. The dispute involves the date by which the ten years must have accrued. Firestone contends the crucial date is February 18, 1976, the date of the accident which left Churchwell disabled and unable to return to work, and therefore he did not qualify for benefits. Churchwell counters that five months must pass before an employee is deemed permanently and totally disabled and this period must be tacked to his earlier credited service and therefore he is qualified for the benefits. Although we are sympathetic to Churchwell's plight, a fair reading of the Plan and Agreement does not reveal an ambiguity.

A contract must be construed as a whole in determining its meaning, and not from words, phrases, or paragraphs read alone. *R. A. Donnelley & Sons, Co. v. Henry-Williams, Inc.*, (1981) Ind.App., 422 N.E.2d 353 (transfer pending). Likewise, a liberal or technical construction of the contract should not be given to isolated clauses to defeat the true meaning of the contract. *Boswell v. Lyon*, (1980) Ind.App., 401 N.E.2d 735. The reason for these considerations is to give effect to the intent of the parties. *English Coal Co., Inc. v. Durcholz*, (1981) Ind.App., 422 N.E.2d 302; *Piskorowski v. Shell Oil Co.*, (1980) Ind.App., 403 N.E.2d 838. *Boswell.*

The "plain" reading of Article IV, Section 3 negates Churchwell's argument that permanent disability could only be achieved after a five-month period of total disability and, inasmuch as he accumulated credited service during that five-month period, he was eligible for the Plan's benefits. In concise terms Section 3 of Article IV reads:

"An Employee . . . [who after] 10 years of credited service . . . become[s] . . . permanently and totally disabled . . . [through an unavoidable cause] . . ."

In relation to the years of service, the operative factor is the "becoming" permanently and totally disabled. Webster defines "become" as "to come to exist or occur . . . to pass from a previous state or condition and come to be . . ." Webster's Third New International Dictionary 195

(1976). Therefore, assuming unavoidable cause, we perceive the question as being at what point in time an employee passes from being, for example, able bodied, or temporarily totally disabled, to being permanently and totally disabled.[2] Thus, the threshold inquiry for determining eligibility is the time the permanent and total disability occurs. Churchwell was not employed by Firestone for ten years prior to becoming permanently and totally disabled.

It is undisputed that Churchwell's automobile accident was the cause of his permanent and total disability. It is also undisputed that the nature and extent of his disability existed from the moment of the accident. Thus, Churchwell passed from being able bodied to being permanently and totally disabled at the moment he suffered personal injury at the time of the accident.

The five month delay has no effect on when the permanent disability occurs, but is akin to a waiting or qualifying period. It is a means of measuring the probability of the total disability continuing throughout the Employee's life. Thus, to qualify under the Plan, the total and permanent disability must continue for at least five months and presumably continue for life.

Judgment affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.

---

**2.** The Plan is consistent in regarding the event which results in an employee's permanent and total disability as the operative circumstance. Article V, section 3 provides that in no event shall a pension payable under Paragraph 3 (Article IV, sec. 3) commence prior to the sixth month following the *occurrence* of the permanent and total disability.