Edwin N. LOVING and Joan C. Loving, Appellants (Cross-Claimants, and Counterdefendants),

v.

PONDEROSA SYSTEMS, INC., Appellee (Cross-Defendants, and Counterclaimant).

No. 1–482A93.

Court of Appeals of Indiana, First District.

Feb. 7, 1983.

Rehearing Denied March 22, 1983.

Max W. Hittle, Jr., R. Matthew Neff, Krieg, DeVault, Alexander & Capehart, Indianapolis, William H. Andrews, Baker, Barnhart & Andrews, Bloomington, for appellants.

James A. Strain, Stephen W. Lee, Barnes & Thornburg, Indianapolis, for appellee.

RATLIFF, Judge.

## STATEMENT OF CASE

Edwin N. Loving and Joan C. Loving appeal the trial court's setting aside of its earlier order granting partial summary judgment wherein the court determined that the First National Bank of Bloomington was entitled to apply certain fire insurance proceeds to retire the amount of the Lovings' mortgage indebtedness. We reverse.

## FACTS

In 1972 the Lovings purchased a parcel of real estate located in Bloomington, Indiana, from Ponderosa Systems, Inc. The Lovings financed this transaction by means of a note and mortgage from the First National Bank of Bloomington. The Lovings then leased the property by means of a "triple net" commercial lease to Ponderosa for a period of twenty-five years. On December 10, 1979, the Ponderosa restaurant was destroyed by fire. Ponderosa ceased making rental payments as provided by the lease and began to rebuild. Bender Lumber Company filed its mechanic's lien against the real estate in the amount of $2,003.94 on December 31, 1979. Other contractors filed additional mechanics' liens totalling $50,891.48 against the real estate in January 1980, and still other liens were filed in February and March. Lovings made mortgage payments on the property through February 6, 1980. However, after that date they made no further mortgage payments stating that they were unable to make them because they were no longer receiving rental payments from Ponderosa and that the Bank agreed to their action because it expected to receive the insurance proceeds in the amount of the indebtedness. On March 14, 1980, the Bank wrote to the Lovings demanding that the insurance proceeds be applied to the mortgage indebtedness and sent a similar letter to Ponderosa on March 28, 1980. Ponderosa took the position that the insurance proceeds should be used for purposes of rebuilding. On June 6, 1980, the Bank filed its complaint against Lovings, Ponderosa, and construction lienholders on theories of foreclosure and entitlement to the insurance proceeds. The Lovings cross-complained against Ponderosa, and Ponderosa counterclaimed against the Lovings.

On July 29, 1980, the parties entered into an agreement providing for a release of the insurance proceeds of $472,417.00 to Ponderosa for rebuilding costs, except for $175,000 which the Bank retained pending resolution of the lawsuit and with the stipulation that Ponderosa pay all contractors and materialmen who had filed liens against the premises. On March 19, 1981, the trial court made the following entry of summary judgment, entering final judgment thereupon on April 16, 1981:

## "ORDER GRANTING PARTIAL SUMMARY JUDGMENT

The Court, having had under advisement defendants Lovings' Motion For Summary Judgment, and having considered the pleadings, affidavits and exhibits pertaining thereto, and having heard the arguments of counsel, and being now duly advised in the premises, FINDS:

(1) That in June and July of 1972 defendants Loving, defendant Ponderosa Systems, Inc., and plaintiff First National Bank of Bloomington, entered into various agreements constituting a single transaction whereby (a) defendants Loving purchased the land and building located at 520 South Walnut Street, Bloomington, Indiana, utilized as a Ponderosa Steak House, (b) de-

fendants Loving borrowed the purchase price from plaintiff Bank, securing the same with a first mortgage in favor of the plaintiff Bank, (c) defendants Loving leased the premises back to defendant Ponderosa, and (d) defendant Ponderosa and defendants Loving executed a conditional assignment of rents to plaintiff Bank to further secure the mortgage loan;

(2) That the mortgage agreement between plaintiff Bank and defendants Loving required defendants Loving to "keep all buildings which are now or may hereafter be upon the premises unceasingly insured for their full insurable value against loss or damage from fire and tornado in insurance companies acceptable to the Mortgagee and (to) deliver such policies to it, with satisfactory mortgage clause attached", and further that "In case of loss, the insurance money shall be applied upon the indebtedness, in such manner as the Mortgagee may elect, even though the same is not yet due, or at Mortgagee's option may be released to the Mortgagor for the purpose of making repairs or improvements upon said property satisfactory to the Mortgagee";

(3) That the lease agreement entered into by defendants Loving and defendant Ponderosa required defendant Ponderosa to "obtain and maintain fire and extended coverage insurance on the building or buildings on the leased premises, and appurtenances thereto, for the benefit of and payable to the Landlord, Tenant, and Landlord's mortgagee, if any, as their interests may appear in an amount equal to the replacement value less foundations, excavations, underground utilities, slab and slab coverings. Any and all insurance companies providing the required fire and extended coverage must be acceptable to Landlord's mortgagee" and further that "1) In the event of any damage or destruction to improvements on the leased premises during the initial fifteen (15) years of this Lease, the Tenant shall forthwith repair the damages or destroyed improvements, and complete the same as soon as reasonably possible to the condition they were in prior to such damage or destruction, except for such changes in design or materials as may

then be required by law. 2) The Landlord, in such event, shall, to the extent and at the times the insurer and the Landlord's mortgagee make the proceeds of the insurance available for such purposes, reimburse the Tenant for the costs of making such repairs, restoration, rebuilding and replacements; provided, further, that said reimbursements need be made only under such conditions that the Landlord and its mortgagee are assured that at all times the leased premises shall be free of liens or claims of liens by reason of such work, and, provided, further, that the portion of the proceeds paid out at any time shall not exceed the value of the actual work and materials incorporated in the repaired, restored, rebuilt or replaced premises. To the extent, if any, that the proceeds of insurance made available for such purposes are insufficient to pay the entire costs of making such repairs, restorations, rebuilding and replacements, the Tenant shall bear such costs. All repairs and restoration must be completed within six (6) months of the availability of the insurance proceeds. The rental provided for herein shall be decreased in an amount proportionate to the actual portion of the premises rendered unusable by any damage or destruction. It being understood that in the event of total destruction, the rent shall abate completely until the premises are restored. In the event of such total destruction and rental abatement, the term of the Lease shall be extended for a period equal to the time during which the premises are unusable and the rent is abated";

(4) That the conditional assignment of rents expressly provided that "execution of this assignment, however, shall not impair, effect or modify any of the terms or conditions of said Real Estate Mortgage Note and/or said Real Estate Mortgage" and further that "Ponderosa System, Inc., ... is made a signatory hereto and by its execution of this document acknowledges its presence and subordinates its interest in said premises to the mortgagee, First National Bank of Bloomington";

(5) That defendant Ponderosa thereafter insured the premises against fire, obtaining

a policy for same from Lexington Insurance Company on March 20, 1978, covering a period ending on March 1, 1981, the certificate therefor naming defendant Ponderosa as the insured and defendants Loving as an additional insured, said policy further including a Standard Mortgage Clause providing that "loss or damage, if any, under this policy, shall be payable to First National Bank of Bloomington, Bloomington, IN., mortgagee (or trustee) as interest may appear";

(6) That on December 10, 1979, the premises were destroyed by fire;

(7) That thereafter defendant Ponderosa ceased paying rent to defendants Loving, defendants Loving ceased making mortgage payments to plaintiff Bank, and defendant Ponderosa began to rebuild the premises, employing various contractors and materialmen as necessary;

(8) That on June 6, 1980, plaintiff Bank filed under the within cause number its complaint to foreclose on its mortgage;

(9) That on June 19, 1980, Lexington Insurance Company issued its draft in the amount of Four Hundred Seventy-Two Thousand, Four Hundred Seventeen Dollars and No Cents ($472,417.00) pursuant to its obligation under the above-mentioned insurance policy;

(10) That thereafter a dispute arose between plaintiff Bank, defendants Loving and defendant Ponderosa as to who was entitled to said insurance proceeds;

(11) That thereafter, on July 29, 1980, plaintiff Bank, defendants Loving and defendant Ponderosa entered into an agreement providing for release of the insurance proceeds to defendant Ponderosa for application to rebuilding costs, save for the sum of One Hundred Seventy-Five Thousand Dollars and No Cents ($175,000.00) which plaintiff Bank retained pending determination of the within cause of action, all subject to the requirement that the released insurance proceeds be used by defendant Ponderosa initially to pay all contractors and materialmen employed to rebuild the premises;

(12) That the mortgage held by plaintiff Bank is in default and the unpaid principal in the amount of One Hundred Forty-Nine Thousand, Five Hundred Twenty-Nine Dollars and One Cent ($149,529.01) plus interest thereon, is now due and payable;

(13) That various contractors and materialmen who had filed liens against the premises were impleaded as parties defendant herein by plaintiff Bank and all of said lienholders, except for defendant Construction Concepts, have since disclaimed any interest or have been dismissed as parties;

(14) That defendant Construction Concepts has not moved to foreclose on its lien, thoug[h] the same was filed on January 22, 1980;

(15) That defendant Lovings' Cross-Complaint against defendant Ponderosa and defendant Ponderosa's Counterclaim to Lovings' Cross-Claim ask the Court to determine the rights of the parties to the insurance proceeds remaining in the possession of plaintiff Bank;

(16) That although the parties thereto are not the same as to each agreement, the Real Estate Mortgage, Lease, Conditional Assignment and insurance policy are inextricably entwined by specific reference and implication and must be construed together;

(17) That no material issue of fact exists as to the declaration of the respective rights of plaintiff Bank, defendants Loving and defendant Ponderosa pursuant to said agreements, said agreements being plain and unambiguous on their face, and therefore no material issue of fact exists as to the rights of said parties to the insurance proceeds;

(18) That plaintiff Bank is entitled to be paid from the retained insurance proceeds the unpaid mortgage balance in the sum of One Hundred Forty-Nine Thousand, Five Hundred Twenty-Nine Dollars and One Cent ($149,529.01), plus interest thereon;

(19) That defendant Ponderosa is entitled to the remainder if any, of the insurance proceeds, to be applied to the cost of rebuilding and not to exceed the actual costs thereof;

(20) That defendants Loving are entitled to any remaining proceeds after application as hereinbefore set out;

(21) That plaintiff Bank's foreclosure action will be mooted thereby, the mortgage having been satisfied; and

(22) That further proceedings should be held on any incidental damages claimed by defendants Loving to have resulted to them, on the lien of defendant Construction Concepts and the award of attorney fees to any party so claiming.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court:

(1) That defendants Edwin N. Loving's and Joan C. Loving's Motion For Summary Judgment be, and the same hereby is, granted;

(2) That plaintiff First National Bank of Bloomington apply, from the insurance proceeds retained by it, the sum of One Hundred Sixty-Four Thousand, Eighty Dollars and Thirty Cents ($164,080.30) to the mortgage held by it against the premises described in Paragraph 1 of its Complaint in the name of defendants Loving, One Hundred Forty-Nine Thousand, Five Hundred Twenty-Nine Dollars and One Cent ($149,529.01) principal and Fourteen Thousand, Five Hundred Fifty-One Dollars and Twenty-Nine Cents ($14,551.29) interest;

(3) That plaintiff Bank thereafter pay over to defendant Ponderosa the remaining sum of Ten Thousand, Nine Hundred Nineteen Dollars and Seventy Cents ($10,919.70);

(4) That defendant Ponderosa apply said sum to the actual cost of rebuilding the premises as may be unpaid from the proceeds previously placed at its disposal;

(5) That defendant Ponderosa pay over the remainder of said proceeds, if any, to defendants Loving; and

(6) That this cause be set for further pretrial conference on all remaining issues.

SO ORDERED this 19th day of March, 1981.

/s/ Kenneth G. Todd
Kenneth G. Todd, Judge
Monroe Superior Court II"

Record at 241–44.

After arguments upon motions to correct errors by both Lovings and Ponderosa, the trial court granted both motions and vacated its earlier order granting partial summary judgment. Lovings appeal from the vacating of the earlier order and judgment by the following order:

"BE IT FURTHER REMEMBERED, that on the 26th day of January, 1982, The Court, having had under advisement defendants Lovings' Motion to Correct Errors and Defendant Ponderosa's Motion to Correct Errors and being now duly advised, FINDS that its Order Granting Partial Summary Judgment of March 19, 1981, is in error, that there are material issues of fact presented by the pleadings and affidavits, that both Motions to Correct Errors should be granted, that the Order Granting Partial Summary Judgment should be set aside and held for naught, that defendants Lovings' Motion For Summary Judgment should be denied, and that [th]is cause should be set for pre-trial conference and trial as soon as is practicable.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court:

(1) That defendant Ponderosa's Motion to Correct Errors be granted;

(2) That defendants Lovings' Motion to Correct Errors be granted;

(3) That the Court's Order Granting Partial Summary Judgment be vacated and held for naught;

(4) That defendants Lovings' Motion for Summary Judgment be denied; and

(5) That this cause be set for pre-trial conference and trial by the Scheduling Coordinator of the Office of Court Administration as soon as is practicable.

This Court FURTHER FINDS that the pleadings and affidavits clearly establish, without hearing thereon, material issues of fact as to the plaintiff's Complaint and IT IS, THEREFORE, ORDERED that plaintiff's Motion For Summary Judgment be denied.

SO ORDERED this 26th day of January, 1982.

/s/ Kenneth G. Todd
Kenneth G. Todd, Judge
Monroe Superior Court II"

Record at 253.

## ISSUES

1. Are the Lovings entitled to maintain this appeal?

2. Did the trial court err in determining that a genuine issue of material fact precludes summary judgment and in setting aside its original finding that the language of the instruments constituting the agreement among the parties is plain and unambiguous as to the rights of the parties?

3. If the trial court erred, are the Lovings and the Bank entitled as a matter of law to have the Lovings' note paid from the insurance proceeds?

4. If the trial court erred, is Ponderosa entitled to recover an amount equal to Lovings' note or to have an equitable lien against the real estate as security for that debt?

## DISCUSSION AND DECISION

*Issue One*

■ Ponderosa argues that the Lovings are not prejudiced by the trial court's setting aside of its earlier grant of partial summary judgment and, therefore, that their appeal should be dismissed. We disagree.

In its original grant of summary judgment the trial court ordered that the insurance proceeds be applied to retire the Lovings' mortgage indebtedness and found therefore that the Bank's foreclosure action had become moot. By vacating that order the court, in essence, vacated a judgment in Lovings' favor and opened the question of Lovings' liability under the mortgage to further debate and determination. In addition to Indiana Rules of Procedure, Trial Rule 59(F) cited by Ponderosa which provides that any party who is prejudiced by the setting aside of a final judgment following the filing of a motion to correct errors may appeal without filing a motion to correct errors, Appellate Rule 4(A) permits appeals to be taken by either party from a ruling or order upon a motion to correct errors. Such rulings are defined by the Appellate Rule to be appealable final orders. Clearly the Lovings were prejudiced when the trial court set aside a final judgment in its favor and are entitled to maintain this appeal under our trial and appellate rules.

*Issues Two and Three*

We note some confusion in the parties' briefs with respect to the standard of review which will be applied in cases such as this. Our standard is essentially the same as that employed by the trial court. *Richards v. Goerg Boat & Motors, Inc.,* (1979) Ind.App., 384 N.E.2d 1084, 1090, *trans. denied.* An excellent statement of that standard was recently enunciated by Judge Staton in *Jones v. City of Logansport,* (1982) Ind.App., 436 N.E.2d 1138 at 1143:

"The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual dispute and which may be determined as a matter of law. This procedure is an aid in eliminating undue burdens upon litigants and exposing spurious causes. However, the summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized; mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant. *Bassett v. Glock* (1977), Ind.App. [174 Ind.App. 439], 368 N.E.2d 18, 20–21.

The summary judgment procedure is an application of the law to the facts when no factual dispute exists. The party seeking the summary judgment, therefore, has the burden to establish that there is no genuine issue as to any material fact. Any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184.

A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Lee v. Weston* (1980), Ind.App., 402 N.E.2d 23, 24. The factual issue is genuine if it can not be foreclosed by reference to undisputed facts. That is, a factual issue is genuine if those matters properly considered under TR. 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' differing versions. *Stuteville v. Downing* (1979), Ind.App., 391 N.E.2d 629, 631.

Although TR. 56 permits the introduction of affidavits, depositions, admissions, interrogatories and testimony to aid the court in the resolution of the motion for summary judgment, the procedure involved is not a summary trial. *Bassett v. Glock, supra.* In determining whether there is a genuine issue of material fact, the court considers those facts set forth in the non-moving party's affidavits as true, and liberally construes the products of discovery in favor of the same party. And finally, all pleadings, evidence, and inferences therefrom are viewed in the light most favorable to the non-moving party. *Poxon v. General Motors Acceptance Corp., supra.*"

*See also Woodward Insurance, Inc. v. White,* (1982) Ind., 437 N.E.2d 59; *Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281.

■ However, the non-moving party may not simply rest on his pleadings when the moving party establishes the lack of a genuine issue of material fact, but must diligently contest the motion setting forth specific facts to show that there is a genuine factual issue for trial. *Criss v. Bitzegaio,* (1981) Ind., 420 N.E.2d 1221, 1223; *Moll v. South Central Solar Systems,* (1981) Ind.App., 419 N.E.2d 154, 160.

The essence of Ponderosa's argument is that the trial court properly determined that a genuine issue of fact existed with respect to the parties' intent as to how the insurance proceeds were to be used and that such question of fact was the result of conflicting and ambiguous language of the documents constituting the agreement.

Lovings contend that the trial court erred in setting aside its earlier determinations that the language of the agreement was clear and unambiguous and that no genuine issue of material fact existed which would preclude the court's granting of summary judgment.

In the instant case the material facts set out above are undisputed. The chronology of events is established. There is no question by any party but that the mortgage, lease, conditional assignment of rents, and certificate of insurance constitute the legitimate and complete agreement among all the parties. There is no issue of fraud, overreaching, or mistake. The crucial issue is whether or not the language used in these documents is clear and unambiguous as to the rights of the Bank and Lovings to have the insurance proceeds applied to the mortgage indebtedness.

■ In interpreting or construing a contract it is the court's purpose to give effect to the intent of the parties. 6 I.L.E. *Contracts* § 113 at 163 (1958). Such intent is established, however, as of the time the contract was made and as reflected by the language used. *Shahan v. Brinegar,* (1979) Ind.App., 390 N.E.2d 1036, 1041. Courts must consider all of the provisions of a contract to ascertain meaning, not just individual words, phrases, or paragraphs, and must accept a construction which harmonizes the provisions rather than one which views the provisions as conflicting. *Evansville-Vanderburgh School Corp. v. Moll,* (1976) 264 Ind. 356, 363, 344 N.E.2d 831, 837. Contracts or provisions respecting insurance are subject to the same rules of interpretation or construction as are other contract terms. 16 I.L.E. *Insurance* § 101 at 239 (1959). Moreover, in order to apply rules of construction favoring the non-drafter of contract terms respecting insurance, the language must be ambiguous or of doubtful meaning. *See Spears v. Jackson,* (1980) Ind.App., 398 N.E.2d 718, 719; 16 I.L.E. *Insurance* § 106 at 249 (1959). While interpretation and construction of insurance provisions is a function of the trial court, such court must respect the plain meaning of

terms used and not create an ambiguity where none exists. *Crawford v. Ranger Insurance Co.,* (9th Cir.1981) 653 F.2d 1248, 1250. Moreover, the court may not rewrite an agreement for the parties, *Taylor v. American Underwriters, Inc.,* (1976) 170 Ind.App. 148, 152, 352 N.E.2d 86, 89, or torture language to create an ambiguity. *Crawford v. Ranger,* 653 F.2d at 1258. Ambiguity is not established by the mere existence of a controversy as to the meaning of certain insurance provisions. *Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.,* (1976) 171 Ind.App. 309, 356 N.E.2d 693, 696. Language in a written agreement will be considered ambiguous only when reasonably intelligent persons upon reading it would honestly differ as to its meaning. *English Coal Co. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 308, *trans. denied; Huntington Mutual Insurance Co. v. Walker,* (1979) Ind.App., 392 N.E.2d 1182, 1185, *trans. denied.* In any event, ambiguities in language apparent on the face of an agreement may not be explained by extrinsic evidence, *Hauck v. Second National Bank,* (1972) 153 Ind.App. 245, 261, 286 N.E.2d 852, 861, *trans. denied,* and produce

only questions of law appropriately resolved by summary judgment. *Churchwell v. Firestone Industrial Products Co.,* (1982) Ind.App., 431 N.E.2d 853 at 854, *trans. denied.*

▇ First, the mortgage between Lovings and the Bank required fire insurance to be maintained upon the premises and provided that such proceeds, in the event of loss, were to be applied, at the Bank's option, either to the mortgage indebtedness, whether due or not, or to the mortgagor for purposes of rebuilding.[1] Second, paragraph 9(a) of the lease between the Lovings and Ponderosa required Ponderosa to obtain and pay for fire insurance on the premises for the benefit of the Lovings, the Bank, and Ponderosa, according to their respective interests.[2] It provided that the insurance coverage had to be acceptable to the Bank while paragraph 9(b) established Ponderosa's duty to rebuild, Lovings' duty to reimburse Ponderosa for repairs to the extent the insurer and the mortgagee made proceeds available for repair, and Ponderosa's responsibility for costs of rebuilding over and above available insurance proceeds.[3]

1. "That the Mortgagor will keep all buildings and improvements on the said premises in good repair; will permit no waste of any kind; will keep all the buildings which are now or may hereafter be upon the premises unceasingly insured for their full insurable value against loss or damage from fire and tornado, in insurance companies acceptable to the Mortgagee, and will deliver such policies to it, with satisfactory mortgage clause attached, and will pay all insurance premiums when due. In case of loss, the insurance money shall be applied upon the indebtedness, in such manner as the Mortgagee may elect, even though the same is not yet due, or at Mortgagee's option may be released to the Mortgagor for the purpose of making repairs or improvements upon said property satisfactory to the Mortgagee." Record at 115.

2. "(9) *Insurance*
 (a) The Tenant, throughout the term of this Lease and renewal terms, if any, at its own cost and expense, shall obtain and maintain fire and extended coverage insurance on the building or buildings on the leased premises, and appurtenances thereto, for the benefit of and payable to the Landlord, Tenant and Landlord's mortgagee, if any, as their respective interests may appear in an amount equal to the replacement value less foundations, excavations, under-

ground utilities, slab and slab coverings. Any and all insurance companies providing the required fire and extended coverage must be acceptable to Landlord's mortgagee." Record at 121.

3. "(9) *Insurance*
 $*$ $*$ $*$ $*$ $*$ $*$
 (b) 1) In the event of any damage or destruction to improvements on the leased premises during the initial fifteen (15) years of this Lease, the Tenant shall forthwith repair the damages or destroyed improvements, and complete the same as soon as reasonably possible to the condition they were in prior to such damage or destruction, except for such changes in design or materials as may then be required by law. 2) The Landlord, in such event, shall, to the extent and at the times the insurer and the Landlord's mortgagee make the proceeds of the insurance available for such purposes, reimburse the Tenant for the costs of making such repairs, restoration, rebuilding and replacements; provided, further, that said reimbursements need be made only under such conditions that the Landlord and its mortgagee are assured that at all times the leased premises shall be free of liens or claims of liens by reason of such work, and, provided, further,

Third, the certificate of insurance which Ponderosa procured from Lexington Insurance Company, in compliance with the terms of the mortgage and lease, contained a standard, or union, mortgage clause specifically naming the Bank as payee under the policy and explicitly stating that "this insurance, as to the interest of the mortgagee [or trustee] only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceeding ...." [4] As part of this same transaction Lovings and Ponderosa also ex-

ecuted a conditional assignment of rents to the Bank as added security for the mortgage loan. In this document, Ponderosa subordinated its interest to that of the Bank.[5] We find none of this language respecting the responsibility for insurance to be confusing, conflicting, or ambiguous: Ponderosa bore the responsibility of procuring insurance, and the Bank was entitled to apply the insurance proceeds to the mortgage debt. We fail to find that such an interpretation, as is urged by Ponderosa, conflicts with paragraphs 13(b),[6] 15,[7] or

that the portion of the proceeds paid out at any time shall not exceed the value of the actual work and materials incorporated in the repaired, restored, rebuilt or replaced premises. To the extent, if any, that the proceeds of insurance made available for such purposes are insufficient to pay the entire costs of making such repairs, restorations, rebuilding and replacements, the Tenant shall bear such costs. All repairs and restoration must be completed within six (6) months of the availability of the insurance proceeds. The rental provided for herein shall be decreased in an amount proportionate to the actual portion of the premises rendered unuseable by any damage or destruction. It being understood that in the event of total destruction, the rent shall abate completely until the premises are restored. In the event of such total destruction and rental abatement, the term of the Lease shall be extended for a period equal to the time during which the premises are unus[e]able and the rent is abated." Record at 130.

4. "Loss or damage, if any, under this policy, shall be payable to First National Bank of Bloomington, Bloomington, IN mortgagee [or trustee] as interest may appear, and this insurance, as to the interest of the mortgagee [or trustee] only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee [or trustee] shall, on demand, pay the same." Record at 137.

5. "Conditional Assignment
* * * * * *
"Ponderosa System, Inc., a Delaware Corporation, with an office at 3661 Salem Avenue, Dayton, Ohio, and the Lessee under the aforementioned lease, is made a signatory hereto

and by its execution of this document acknowledges its presence and subordinates its interest in said premises to the mortgagee, First National Bank of Bloomington, Bloomington, Indiana, and agrees to make the payments provided under said lease to said mortgagee, First National Bank of Bloomington upon notice being given it by the First National Bank of Bloomington that said bank has a right and is exercising its rights under said conditional assignment of lease. It is further understood and agreed by and between the signatories hereto that said Lessee, Ponderosa System, Inc., shall have the right to make said payments upon receiving notice from the First National Bank of Bloomington without permission, consent or approval of the Lessors, Edwin N. Loving and Joan C. Loving, the necessity of the same being hereby waived as a part of the execution of this conditional assignment of lease. Notwithstanding any of the foregoing, the subordination of Ponderosa System, Inc.'s interest in said premises is expressly conditioned upon recognition of the validity of the above-described lease and provision for its continuance by said mortgagee so long as Ponderosa System, Inc. is not default under said lease." Record at 130.

6. "(13) *Cooperation Respecting Mortgages*
* * * * * *
(b) The Tenant shall cooperate with the Landlord in any attempts it may make, from time to time, to obtain mortgage financing on the leased premises, provided, of course, that it shall not be required to financially obligate itself to any such mortgagee. The Tenant, if so requested, by the Landlord, will subject and subordinate its interest to any such mortgage, on condition that the Landlord shall first procure from the mortgagee an agreement, in writing and in recordable form, which shall be delivered to the Tenant, providing, in substance, that so long as the Tenant shall faithfully discharge each and every obligation on its part to be kept and performed under the terms of this lease, or any renewal thereof, its tenancy will not be disturbed nor will this lease nor

7. See note 7 on page 906.

18(c)[8] of the lease. We do not read the provision in paragraph 13(b) of the lease stating that Ponderosa shall not be required to become financially obligated to the mortgagee to be contrary to the provisions respecting insurance. Moreover, the provisions of 13(b) and of the conditional assignment of rents respecting Ponderosa's subordination of its interest to the Bank's are in complete harmony.

Case law has recognized that the provision in mortgages or insurance policies calling for insurance proceeds to be paid to the mortgagee "as its interest appears" are words of art and entitle the mortgagee to the proceeds to the extent of the mortgage debt. *Pearson v. First National Bank of Martinsville,* (1981) Ind.App., 408 N.E.2d 166, 170, *trans. denied. See also Hoosier Plastics v. Westfield Savings & Loan,* (1982) Ind.App., 433 N.E.2d 24, 27, *trans. denied;* 5A Appleman, *Insurance Law and Practice* § 3401 (1970). The analysis underlying this position posits the mortgagee's interest as one in the indebtedness, not in the property, and also finds that under such standard, or union, mortgage clause the mortgagee has entered into a separate agreement with the insurer. Therefore, the mortgagee is not subject to any defenses which the insurer might have against the mortgagor, 5A Appleman, *Insurance Law and Practice* § 3401 Supp. at 286 (1970), and is entitled to the insurance funds no matter what the mortgagor has done. *See, e.g., State Farm Fire & Casualty Co. v. Aetna Fire Underwriters Insurance Co.,* (1982) Fla.App., 413 So.2d 144; *Cole v. Michigan Mutual Insurance Co.,* (1982) 116 Mich.App. 51, 321 N.W.2d 839. In fact, a recent Pennsylvania case has held that under a standard mortgage clause in a homeowner's policy in which the insured agreed to provide coverage of the mortgagee's interest even in the face of foreclosure or other proceedings against the property, the mortgagee's interest in the property remained covered by insurance following foreclosure and purchase of the property by the mortgagee. *See Laurel National Bank v. Mutual Benefit Insurance Co.,* (1982) 297 Pa.Super. 473, 444 A.2d 130.

It is well established that the rights of the mortgagee to the insurance proceeds are determined as of the time of the loss. *Rosenbaum v. Funcannon,* (9th Cir.1962) 308 F.2d 680, 684; *American Bank & Trust Co. v. Byron,* (1977) La.App., 347 So.2d 850, 852; *Lembo v. Parks,* (1978) 6 Mass.App. 850, 851, 372 N.E.2d 1316, 1317; *Norfolk &*

any renewal thereof be affected by any default under said mortgage, and that in the event of a foreclosure or any enforcement of said mortgage the rights of the Tenant shall expressly survive and shall not be cut off and that this Lease and any renewal thereof shall, in all respects, continue in full force and effect if the Tenant pays the net rent provided herein and fully performs all of its other obligations hereunder." Record at 123–24.

7. "(15) *Enjoyment without Molestation.* If the Tenant pays the rent it is obligated hereunder to pay, and observes all other terms, covenants and conditions hereof, it shall occupy and enjoy the use of the property hereby leased during the term of this Lease and any renewal thereof without any hindrance, molestation, or ejection by the Landlord, its successors or assigns. However, the Landlord purchased the leased premises from the Tenant and the Tenant agrees that it will raise no objection to the state of the Landlord's title as it existed on the date when the Landlord acquired the leased premises." Record at 124.

8. "(18) *Default*
\* \* \* \* \* \*

(c) In the event the Landlord neglects to pay when due, any obligations on any mortgage or encumbrance affecting title to the demised premises and to which this Lease is Subordinated, or fails to perform any obligations specified under this Lease, then the Tenant, after continuance of any failure or such default for twenty (20) days after notice in writing thereof by the Tenant, may pay said assessments, principal, interest or charges or cure such default, all on behalf of and at the expense of the Landlord, and do all necessary work and make all necessary payments in connection therewith, and the Landlord agrees thereafter on demand, to pay the Tenant forthwith the amount so paid by the Tenant together with interest thereof at the rate of the lesser of eight percent (8%) per annum and the highest legal rate of interest permitted by law from the time each such expenditure is made until reimbursed, and agrees that the Tenant may withhold any and all rental payments and other payments thereafter due to the Landlord and apply same to the payment of such indebtedness." Record at 126.

*Dedham Mutual Fire Insurance Co. v. Schlehuber,* (1976) Fla.App., 327 So.2d 891, 892; *Equitable Life Assurance Society of the United States v. Great Atlantic Insurance Co. of Delaware,* (1972) 330 N.Y.S.2d 840, 843, 69 Misc.2d 714, aff'd 337 N.Y.S.2d 983, 40 A.D.2d 956; *Lutheran Brotherhood v. Hooten,* (1970) Fla.App., 237 So.2d 23, 24. Therefore, a foreclosure action brought after the loss will not necessarily affect the insurer's liability to the mortgagee.

*Rosenbaum.*[9]

 We recognize, as did this court in *Hoosier Plastics v. Westfield Savings & Loan Association,* (1982) Ind.App., 433 N.E.2d 24 at 27, that "while the mortgagee is entitled to disposition of the proceeds pursuant to the loss payable clause, he may, by agreement, still have liability over to the mortgagor for the cost of repairs or restoration." Thus, in Indiana the general rule will not prevail if there is an agreement to the contrary. Unlike Ponderosa, we are unable to conclude that paragraph 9 of the lease is an agreement which reflects the parties' intent that the insurance proceeds be used for purposes of rebuilding. The plain language of paragraph 9 explicitly states that Ponderosa must bear all costs of repair and restoration to the extent that insurance proceeds are not made available for rebuilding by the Bank or insurer. Here unchallenged letters in the record from the Bank to Lovings' attorney and Ponderosa's attorney established Bank's election to apply the insurance proceeds to the mortgage indebtedness. Moreover, reimbursements for repairs made under the lease are required only if the premises are kept free from liens as a result of the restoration. Undisputed evidence in the record establishes that Ponderosa caused over $54,000 worth of mechanics' liens to attach to the premises. Furthermore, paragraph 3 of the lease [10] states that Ponderosa was to make insurance premium payments in lieu of additional rent, it being the purpose of the parties that rent paid to the Lovings be absolutely "net." The purchase, lease-back arrangement between Lovings and Ponderosa is not an uncommon financing device, and in the context of this case it becomes apparent that the insurance proceeds which would be applied to retire the mortgage indebtedness were intended to be in lieu of the rental payments which under paragraph 9 of the lease terminated upon complete destruction of the property. Clearly, had the Lovings raised Ponderosa's rental payments by an amount equal to the insurance premiums and paid those premiums itself, there could be no question but that the result reached in this case would follow. We, therefore, cannot agree with Ponderosa that the agreement supports their position.

 We must also reject Ponderosa's argument that the Bank's bringing a foreclosure action against Lovings precluded the Bank's action for or recovery of insurance proceeds. We refer Ponderosa to the reasoning in *Lutheran Brotherhood v. Hooten* where the Florida court wrote,

---

**9.** We need not consider under the facts presented in this case the situation which arises when insurance proceeds are insufficient to retire the mortgage indebtedness.

**10.** "3. *Rent*

\* \* \* \* \* \*

(f) The Tenant shall pay as additional rent, all taxes, assessments, water rents, and other governmental charges, all public utility charges, all premiums on insurance policies required by the terms hereof, and all other expenses and charges, which, during the term hereof, and each renewal term, shall arise, be levied, assessed, charged or imposed upon or with respect to, or be incurred in connection with, the ownership, possession, rent, use, occupation, operation, maintenance, repair and alteration of the leased premises (except income, estate, succession, inheritance, and transfer taxes imposed upon the Landlord), it being the purpose and intent of the Landlord and the Tenant that the net rent shall be absolutely net to the Landlord so that this Lease shall yield, net, to Landlord, the net rent specified above in each year during the term hereof and all renewal terms, if any. The Tenant agrees to indemnify and save the Landlord harmless from and against all damages, costs and expenses, which may be incurred or sustained by Landlord by reason of the non-payment of the additional rent by Tenant." Record at 118.

"The reason that mortgagees require mortgagors to obtain insurance on the mortgaged premises is to provide additional security for the debt. If we were to hold that appellant Lutheran Brotherhood was barred from receiving the portion of the insurance proceeds it is entitled to because it had already availed itself of one of its security devices (foreclosure and deficiency judgment), we would frustrate Lutheran Brotherhood's attempt to provide itself with additional security. We would in effect be saying that mortgagees can have as many different types of security [as] they want, but once they use one security device, they would be barred from using others to recover the unsatisfied part of the debt. This we will not do.

There is certainly nothing inconsistent between Lutheran Brotherhood's foreclosure and obtaining a deficiency judgment, on the one hand, and its attempt to collect the amount of the unsatisfied debt evidenced by a deficiency judgment out of the insurance proceeds on the other hand. There are neither inconsistent factual allegations nor inconsistent legal theories. Therefore, it is only the satisfaction of the entire mortgage debt that will bar Lutheran Brotherhood's claim on the insurance proceeds."

237 So.2d at 24–25. The court, of course, also stated the obvious rule that Lutheran Brotherhood was entitled to only one satisfaction. The same reasoning would apply where the entire indebtedness were satisfied by the application of the insurance proceeds. In the instant case the Bank's right to the insurance proceeds were fixed at the time of the loss and the Bank's action on both the theories of entitlement to the proceeds and of foreclosure did not represent inconsistent, contradictory, or mutually exclusive methods of recovery.

*Issue Four*

■ Ponderosa argues strenuously that even if the language constituting the agreement is found to be clear and unambiguous, it does not evince an intent that the Lovings should enjoy the windfall of having their mortgage paid at Ponderosa's expense and of a new building added to their property as well. Ponderosa contends that equity should prevent such unjust enrichment by recognizing an equitable lien in their favor against Lovings' property. Ponderosa cites us to the case of *United Stores of America, Inc. v. Fireman's Fund Insurance Co.,* (8th Cir.1970) 420 F.2d 337 for the proposition that because the real purpose for the lessee's purchase of fire insurance was not solely for the benefit of the mortgagee, but primarily for its own and the lessor's benefit, acceptance by the mortgagee carried with it an obligation to apply it for the intended purposes. Even though the headnote language of *United Stores* is appealing, we do not find that the case itself provides much support for Ponderosa's position. In *United Stores,* a fire destroyed property owned by Jerry and Eleanor Spitzer, leased to their wholly owned corporation, United Stores of America, Inc., and mortgaged by Spitzers to Mercantile Trust Company National Association. United Stores had procured the insurance in its own name as the insured, with a loss payable clause running to Mercantile, and with a standard mortgage clause. The lease between Spitzers and United Stores, similar to the lease in our case, was characterized as a "net, net lease" which provided that the actual premium paid by the lessee was in lieu of additional rent and was attributable therefore to the lessor. The insurer issued a check payable to Mercantile and United Stores which United Stores endorsed over to Mercantile. The insurer took back, in return, an assignment of the mortgage. The holding of the Eighth Circuit Court of Appeals was that no right of subrogation survived to the insurer because upon analysis of the lease and the relationship between the lessor and lessee the purposes for which the policyholder had acquired fire insurance were satisfied by application of the proceeds to reduce the mortgage indebtedness. Further, it held that application of the insurance proceeds extinguished the mortgage, leaving nothing to be assigned. In the final analysis, the court in *United Stores* found, as we find,

the purpose and intent of the parties to have been established by their lease as well as the mortgage.

Ponderosa also argues that equitable considerations should prevent the Lovings' unjust enrichment by recognizing an equitable lien in their favor against Lovings' property. We recognize the existence of a few cases, which might be denominated a minority view, holding that a mortgagor has priority over a mortgagee to recover insurance proceeds where rebuilding the damaged or destroyed property protects the mortgagee's security interest. *See Starkman v. Sigmond,* (1882) 184 N.J.Super. 600, 446 A.2d 1249 citing *Schoolcraft v. Ross,* (1978) 81 Cal.App.3d 75, 146 Cal.Rptr. 57;[11] *Fergus v. Wilmarth,* (1886) 117 Ill. 542, 7 N.E. 508; *Cottman Company v. Continental Trust Co.,* (1936) 169 Md. 595, 182 A. 551; Osbourne, Nelson & Whitman, *Real Estate Finance Law* § 4.15 at 150 (3 ed. 1979); 46 C.J.S.2d, *Insurance* § 1147 at 29 (1946). The rationale of this position is appealing: If the purpose of insurance is to maintain security for the mortgage debt and if the property is restored, then the security has not been impaired. Further, because the purpose of insurance is to indemnify the party suffering a loss while attempting to maintain the status quo among all the parties without elevating any party to a better position than he enjoyed prior to the loss, it is inequitable to permit either the mortgagee or, in this case, both the mortgagee and the landlord to attain a better position than they originally enjoyed. Unfortunately, however, the facts in this case do not fall within the tests established by *Starkman:* no agreement to the contrary and no impairment of security. Moreover, the Lovings are not *unjustly* enriched. Ponderosa agreed to pay insurance premiums in lieu of additional rent, hence at Lovings' expense. Ponderosa also agreed to rebuild at its own expense if insurance proceeds were not available. Finally, Ponderosa permitted liens to attach to Lovings' property contrary to terms of the lease. One must first do equity before he seeks equity.

We find, therefore, that the trial court erred in concluding that a genuine issue of material fact precluded summary judgment in this cause and in setting aside its earlier findings that the language of the agreement was clear and unambiguous, that there was no genuine issue of material fact as to the Bank's right to offset the mortgage indebtedness with insurance proceeds, and that the foreclosure issue was moot. The trial court is ordered, therefore, to reinstate its original entry of partial summary judgment and to strike any language therein which is inconsistent with this opinion.

Judgment appealed from reversed.

ROBERTSON, P.J., concurs.

NEAL, J., dissents with opinion.

NEAL, Judge, dissenting.

I respectfully dissent.

The essence of this case is as follows: Ponderosa, by the terms of its lease, was required to rebuild in case of fire, and purchased a policy of insurance protecting that obligation. The policy was payable to First National, the mortgagee, and the Lovings, the mortgagors, as their interests appeared. The obvious purpose of the entire arrangement was to protect the security of the bank, and the property interests of the Lovings. According to the majority holding, the end result was: (1) the bank's debt was satisfied, (2) Lovings own a new building free of the mortgage, and (3) Ponderosa gets no benefit from its own policy. In effect, as concerns us here, Lovings have received a double recovery to the extent of the unpaid balance on the mortgage.

A thread runs throughout the law that there is only one recovery for a loss whether in contract or in tort. One full recovery is permitted against one or all joint tort feasors or joint obligors on a contract. *See Cooper v. Robert Hall Clothes,* (1979) Ind., 390 N.E.2d 155. *See also* 9 I.L.E. *Damages* § 21 *et seq.*

---

11. We note that the reasoning of *Schoolcraft v. Ross* was discussed and rejected by this court in *Pearson v. First National Bank of Martinsville,* (1980) Ind.App., 408 N.E.2d 166 at 170.

As a general rule property insurance creates a contract of indemnity. Hence, both the extent and the limits of recovery are found in the concept of making good the loss which the insured has sustained. A fire insurance policy does not entitle the insured to any more than indemnity for the actual loss sustained; it only places him in the same financial condition he would have been in if no fire had occurred. Couch on Insurance 2d § 54:4. *See Travelers Indemnity Co. v. Armstrong,* (1982) Ind., 442 N.E.2d 349; 45 C.J.S. *Insurance* § 915; *see also* 16 I.L.E. *Insurance* § 315. Recovery on several insurance policies covering the same interest in property is restricted to one recovery, the actual loss. Couch, *supra,* § 62:1. In order for an insurance policy to be valid, the insured must have an insurable interest in the property. Such an interest exists if the insured derives pecuniary benefit or advantage from the preservation or the continued existence of the property, or if the insured will sustain pecuniary loss by its destruction. *All Phase Construction Corporation v. Federated Mutual Insurance Company,* (1976) 168 Ind.App. 19, 340 N.E.2d 835; 44 C.J.S. *Insurance* 175(b); Appleman, Insurance Law and Practice § 2123. If there is no insurable interest, or if the property is doubly insured, the policy is in effect a gambling contract and is void as against public policy. Appleman, *supra,* § 2121. Gambling contracts are void for the reason that "such policies have a tendency to create a desire for the event" insured against and furnish strong temptation to bring it about. 44 C.J.S. *Insurance* § 243.

The construction placed upon the contracts in this case clearly permits Lovings a double recovery for the destruction of their own property. I am of the opinion that such recovery is prohibited as against public policy, and the documents herein should be interpreted in that light.